# UNITED STATES DISTRICT COURT FOR
# THE MIDDLE DISTRICT OF PENNSYLVANIA

DOUGLAS B. PUGH,        :
       Petitioner       :     CIVIL ACTION NO. 3:15-CV-0364
                         :     (Judge Nealon)
      v.                  :
                         :
MICHAEL D. OVERMYER,   :
       Respondent    :

## MEMORANDUM

Petitioner, Douglas B. Pugh, a state prisoner currently confined at the State Correctional Institution-Forest, Marienville, Pennsylvania ("SCI-Forest"), initiated the above-captioned action by filing a pro se Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. (Doc. 1). On February 24, 2015, the Court issued an Order granting Petitioner leave to withdraw his petition without prejudice to file an amended petition raising all grounds for relief from his conviction. (Doc. 3). On April 14, 2015, Petitioner filed an amended petition. (Doc. 7). On September 3, 2015, Respondent filed a response to the amended petition. (Doc. 31). On September 15, 2015, Petitioner filed a traverse. (Doc. 32). For the reasons that follow, the petition will be denied.

## I.    FACTUAL BACKGROUND

Petitioner "was arrested during a police search of 23A North Fifth Street, Stroudsburg, PA, on December 3, 2009." Commonwealth v. Pugh, No. 3134 EDA

2013, at p. 1 (Pa. Super. Ct. Aug. 19, 2014). During the search Petitioner was observed pushing "an air conditioning unit out of a [second] floor window." Pugh, No. 3134 EDA 2013, at p. 1 (alteration in original). He was also seen "throwing 'rocks' of crack cocaine from" the same window. Id. "Police entered the residence, and found [Petitioner] in a back bedroom with Ms. Aracelis Gonzalez." Id. "Crack cocaine, three [(3)] digital scales, approximately $1300 in cash, and numerous plastic bags, some with corners cut off, were found in the bedroom where" Petitioner was located by police. Id. at pp. 1-2.

After Petitioner was arrested, "[a] loaded .40 caliber handgun with the serial numbers removed was found inside a drawer of a night stand next to the bed." Id. "At trial, a Mr. Jonathon Moss (Moss) testified that the handgun was his, but that he had left the gun in another area of the apartment in October 2009." Id. at p. 2. "At that time, the magazine was not inserted in the gun and it was not loaded," and Moss had not returned since October 2009. Id.

On November 8, 2010, after a jury trial, Petitioner was convicted of possession with intent to deliver ("PWID") cocaine, criminal conspiracy, possession of cocaine, possession of drug paraphernalia, possession of a firearm with manufacturer's number obliterated, and endangering the welfare of a child. See Commonwealth v. Pugh, No. CP-45-CR-2090-2009; (Doc. 36-1). On January

2

25, 2011, Petitioner was sentenced to an aggregate state prison sentence of not less than seventy-two (72) months to no more than one hundred and forty-four (144) months and to pay restitution. Pugh, No. CP-45-CR-2090-2009. On February 1, 2011, Petitioner filed a post-sentence motion with the trial court. Commonwealth v. Pugh, No. 1165 EDA 2011, at p. 3; (Doc. 31-19, p. 4). On March 28, 2011, the trial court denied Petitioner's post-sentence motion. Pugh, No. CP-45-CR-2090-2009; Pugh, No. 1165 EDA 2011, at p. 3; (Doc. 31-19, p. 4).

On April 27, 2011, a notice of appeal was filed with the trial court which stated that Petitioner had filed an appeal with the Pennsylvania Superior Court. Pugh, No. CP-45-CR-2090-2009; Pugh, No. 1165 EDA 2011, at p. 4; (Doc. 31-19, p. 5). On January 6, 2012, Petitioner's sentence was affirmed by the Pennsylvania Superior Court. Pugh, No. 1165 EDA 2011.

On December 3, 2012, Petitioner filed a timely petition for post-collateral relief with the sentencing court. Pugh, No. 3134 EDA 2013, at p. 2. On October 16, 2013, the Court of Common Pleas for Monroe County denied Petitioner's PCRA petition. Id. On November 8, 2013, Petitioner filed a notice of appeal with the PCRA court. Id. On August 19, 2014, the Pennsylvania Superior Court affirmed the PCRA court's denial of Petitioner's PCRA petition. See Id. at p. 9. On September 17, 2014, Petitioner appealed to the Pennsylvania Supreme Court.

Pugh, No. 3134 EDA 2013; Petition for Allowance of Appeal, Commonwealth v. Pugh, No. 730 MAL 2014 (Pa. filed Sept. 17, 2014). On December 11, 2014, the Pennsylvania Supreme Court denied Petitioner's petition for allowance of appeal. Pugh, No. 730 MAL 2014.

On December 26, 2014, Petitioner filed a second PCRA petition in the Court of Common Pleas for Monroe County. Pugh, No. CP-45-CR-2090-2009. On February 24, 2015, Petitioner filed an amended second PCRA petition. Id. The Commonwealth of Pennsylvania filed its answer to the amended second PCRA petition on March 20, 2015. Id. On May 4, 2015, the Monroe County Court of Common Pleas dismissed Petitioner's amended second PCRA petition. Id. On June 4, 2015, Petitioner filed a notice of appeal of the May 4, 2015, order dismissing his amended second PCRA petition. (Doc. 16-6, p. 2).

On July 2, 2015, the Pennsylvania Superior Court issued an order directing Petitioner to show cause why his appeal should not be quashed as untimely filed on June 4, 2015, from the denial of the petition for post-conviction relief on May 4, 2015. Commonwealth v. Pugh, No. 1623 EDA 2015 (Pa. Super. Ct. filed July 17, 2015). On July 17, 2015, Petitioner filed a praecipe for discontinuance with

the Pennsylvania Superior Court.[1]  Praecipe for Discontinuance, <u>Pugh</u>, No. 1623

EDA 2015 (Pa. Super. Ct. filed July 17, 2015).

## II.    <u>STANDARD OF REVIEW</u>

"A district court is authorized to 'entertain an application for a writ of

habeas corpus in behalf of a person in custody pursuant to the judgment of a State

court only on the ground that he is in custody in violation of the Constitution or

laws or treaties of the United States.'"  <u>Parish v. Wetzel</u>, 2015 U.S. Dist. LEXIS

68779, at *4 (M.D. Pa. May 28, 2015) (Conner, J.) (quoting 28 U.S.C. § 2254(a)).

"A petition for writ of habeas corpus is the exclusive federal remedy for a state

prisoner challenging the very fact or duration of his or her confinement."  <u>Id.</u>

(citing <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 499 (1973)).

"A petitioner filing for relief under the federal Antiterrorism and Effective

Death Penalty Act of 1996 ('AEDPA'), must generally comply with the exhaustion

requirement of 28 U.S.C. § 2254(b)(1)(A), before a federal court can consider the

merits of his habeas corpus petition."  <u>Id.</u> (citing <u>Baldwin v. Reese</u>, 541 U.S. 27,

---

[1]  Respondent states that Petitioner currently has two (2) motions pending before the trial court.  (Doc. 31, pp. 3-4).  Specifically, Respondent points to the motions filed on June 19, 2015. (<u>Id.</u>); <u>Pugh</u>, No. CP-45-CR-2090-2009.  To date, the docket sheet for <u>Pugh</u>, No. CP-45-CR-2090-2009, which is available through Pennsylvania's Unified Judicial Docket System docket research at: http://ujsportal.pacourts.us/, establishes that no action has been taken on either of those motions.  However, Petitioner contends that these motions are no longer pending.  <u>See</u> (Doc. 32, p. 2) (citing (Doc. 10)).  Further, a review of the docket sheet indicates that the case was marked "completed" on July 27, 2015.

29 (2004)).  "An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."  28 U.S.C. § 2254(c); see also Rose v. Lundy, 455 U.S. 509, 518-19 (1982) (finding that before a federal court can adjudicate claims under habeas corpus, interests of comity and federalism dictate that the state courts must have the first opportunity to decide the petitioner's claims).  The exhaustion requirement is rooted in considerations of comity; the statute is designed to protect the role of the state court in enforcement of federal law and to prevent disruption of state judicial proceedings.  Rose, 455 U.S. at 515, 518-19; Castille v. Peoples, 489 U.S. 346, 349 (1989).

"State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  O'Sullivan v. Boerckel, 526, U.S. 838, 845 (1999); see Walker v. Vaughn, 53 F.3d 609, 615 (3d Cir. 1995) (quoting Keeney v. Tamayo-Reyes, 504 U.S. 1, 10 (1992) ("Just as the State must afford the petitioner a full and fair hearing on his federal claim, so must the petitioner afford the State a full and fair opportunity to address and resolve the claim on the merits.")).  "A habeas petitioner retains the burden of showing that all of the

claims alleged have been 'fairly presented' to the state courts."  Englert v. PA.

State Attorney Gen., 2015 U.S. Dist. LEXIS 67546, at *15 (M.D. Pa. May 26,

2015) (Caputo, J.).  "To 'fairly present' a claim, a petitioner must present its

'factual and legal substance to the state courts in a manner that puts them on notice

that a federal claim is being asserted.'"  Id. (quoting Rainey v. Varner, 603 F.3d

189, 198 (3d Cir. 2010)).  "A federal habeas petitioner 'shall not be deemed to

have exhausted the remedies available in the courts of the State . . . if he has the

right under the law of the State to raise, by any available procedure, the question

presented."  28 U.S.C. § 2254(c).  An exception to the exhaustion rule exists if

"there is an absence of available State corrective process" or "circumstances exist

that render such process ineffective to protect the rights of the applicant."  Id. at §

2254(b)(1)(B)(i), (ii).

  "In addition, AEDPA endows a state tribunal's findings of fact with a

'presumption of correctness,' and this presumption extends 'to the factual

determinations of state trial and appellate courts.'"  Williams v. Beard, 637 F.3d

195, 204 (3d Cir. 2011) (quoting Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.

2001)).  "To overcome the presumption, a habeas petitioner must proffer clear and

convincing evidence to show that a factual determination is 'objectively

unreasonable in light of the evidence presented in the state-court proceeding.'"  Id.

(quoting Miller-El v. Cockrell, 537 U.S. 322, 340 (2003)).

Section 2254 of Title 28 in the United States Code "gives federal courts jurisdiction to entertain habeas corpus petitions from individuals who are 'in custody' pursuant to a state court judgment." Obado v. New Jersey, 328 F.3d 716, 717 (3d Cir. 2003) (citing 28 U.S.C. § 2254(a)). "While the 'in custody' requirement is liberally construed for purposes of habeas corpus, for a federal court to have jurisdiction, a petitioner must be in custody under the conviction he is attacking at the time the habeas petition is filed." Id. (citing Maleng v. Cook, 490 U.S. 488, 490-92 (1989)). "The meaning of 'custody' has been broadened so that it is no longer limited in the § 2254(a) context to physical custody alone but also applies where individuals are subject both to 'significant restraints on liberty . . . which were not shared by the public generally,' along with 'some type of continuing governmental supervision.'" Id. (quoting Barry v. Bergen Cnty. Probation Dep't, 128 F.3d 152, 160 (3d Cir. 1997)). "In making a custody determination, a court looks to the date that the habeas petition was filed." Barry, 128 F.3d at 159 (citing Carafas v. LaVallee, 391 U.S. 234, 238-40 (1968)).

The United States Supreme Court has "never held, however, that a habeas petitioner may be 'in custody' under a conviction when the sentence imposed for that conviction has fully expired at the time his petition is filed." Maleng, 490

U.S. at 491 (emphasis in original). "Although collateral consequences of a conviction may prevent a case from becoming moot if the petitioner is released form custody after he filed his petition, 'once the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual "in custody" for the purposes of a habeas attack upon it.'" Tolman v. Commonwealth of Pennsylvania, 2016 U.S. Dist. LEXIS 52223, at *4 (W.D. Pa. Apr. 18, 2016) (quoting Maleng, 490 U.S. at 492). A petitioner "is not in custody on a concurrent sentence that has expired." FEDERAL HABEAS MANUAL § 1:13 (May 2016); see Bussie v. New Jersey, 2014 U.S. Dist. LEXIS 151441, at *13-14 (D.N.J. Oct. 24, 2014) (finding that the petitioner's concurrent sentences that "have long expired" do not satisfy the "in custody" requirement); Hatcher v. Ricci, 2010 U.S. Dist. LEXIS 76608, at *33-34 n.9 (D.N.J. July 29, 2010); see generally United States v. Ross, 801 F.3d 374, 382-83 (3d Cir. 2015).

For those section 2254 claims to which a court has jurisdiction to review on the merits, "[u]nder the [AEDPA], federal courts reviewing a state prisoner's application for a writ of habeas corpus may not grant relief 'with respect to any claim that was adjudicated on the merits in the State court proceedings' unless the claim (1) 'resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States' or (2) 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Martz v. Mooney, 2016 U.S. Dist. LEXIS 59078, at *12-13 (M.D. Pa. May 4, 2016) (Munley, J.) (quoting 28 U.S.C. § 2254(d)). "[B]ecause the purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction," Greene v. Fisher, 565 U.S. 34, 43 (2011), "[t]his is a difficult to meet and highly deferential standard . . . which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170, 181 (2011). In particular, "[a] decision is 'contrary to' federal law if 'the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Martz, 2016 U.S. Dist. LEXIS 59078, at *13 (alterations in original) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). "A decision is an 'unreasonable application' of federal law if the state court identified the correct governing legal rule but applied the rule to the facts of the case in an objectively unreasonable

manner." Martz, 2016 U.S. Dist. LEXIS 59078, at *13-14 (citing Renico v. Lett, 559 U.S. 766, 773 (2010)). "A decision is based on an 'unreasonable determination of the facts' if the state court's factual findings are objectively unreasonable in light of the evidence presented to the state court." Id. at *14 (citing Miller-El, 537 U.S. at 340). Said differently, a "decision involves an unreasonable application of clearly established law where a state prisoner shows 'that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Saranchak v. Sec'y Pa. Dep't of Corr., 802 F.3d 579, 589 (3d Cir. 2015) (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)). "Thus, a state court's application must be 'objectively unreasonable, not merely wrong; even clear error will not suffice.'" Id. (quoting White v. Woodall, 134 S. Ct. 1697, 1702 (2014)).

Importantly, "[t]he State court's factual findings are 'presumed to be correct,' and [Petitioner] bears 'the burden of rebutting the presumption of correctness by clear and convincing evidence.'" Id. (quoting 28 U.S.C. § 2254(e)(1)). "But 'even if a state court's individual factual determinations are overturned, what factual findings remain to support the state court decision must still be weighed under the overarching standard of section 2254(d)(2).'" Id.

(quoting <u>Lambert v. Blackwell</u>, 387 F.3d 210, 235-36 (3d Cir. 2004)).

## III.   <u>DISCUSSION</u>

Petitioner claims that his petition should be granted because his right to due process and right to counsel were violated. Specifically, he claims that his due process right was violated because the evidence presented at trial was insufficient to support his convictions, and that his right to counsel was violated because he received ineffective assistance. (Doc. 7). These claims will be addressed below.[2]

---

[2] As stated above, Petitioner was convicted of and sentenced for Counts 1, 2, 4, 5, 6, and 8. Petitioner was sentenced on Count 1, PWID cocaine, to be incarcerated in a state correctional institution for "a period of not less than 60 months nor more than 120 months, pay restitution in the amount of $113 to the Commonwealth of Pennsylvania and pay the costs of these proceedings;" on Count 2, criminal conspiracy, to be incarcerated in a state correctional institution "for a period of not less than 12 months nor more than 24 months, [which] shall run concurrently to Count 1;" on Count 4, possession of cocaine, "no sentence [was] imposed as this charge merge[d] with Count 1 for purposes of sentencing;" on Count 5, possession of drug paraphernalia, to be incarcerated in a state correctional institution "for a period of not less than one month nor more than 12 months and pay the costs of these proceedings," which "shall run concurrently to those in Counts 1 and 2;" on Count 6, possession of a firearm with manufacturer's number obliterated, to be incarcerated in a state correction institution "for a period of not less than 12 months nor more than 24 months," which "will run consecutively to Counts 1, 2 and 5 for a total aggregate term of not less than 72 months nor more than 144 months;" and on Count 8, endangering the welfare of children, to be incarcerated in a state correctional institution "for a period of not less than 12 months nor more than 24 months and pay the costs of these proceedings," which "will run concurrently to Counts 1, 2, and 6." (Doc. 7-1, pp.12-14). Notably, at sentencing, Petitioner was given a "time credit of 111 days from December 3, 2009 to February 2, 2010 and December 7, 2010 to January 24, 2011." (<u>Id.</u> at pp. 13-14). On April 3, 2017, the Court issued an Order directing the parties to address whether the sentences for Counts 2, 4, 5, and 8 had expired prior to the institution of this action. (Doc. 35). On April 13, 2017, Respondent filed a memorandum stating that the sentences imposed for Counts 2, 4, 5, and 8 had expired prior to the institution of this action. (Doc. 36). Notably, the Court also gave Petitioner an opportunity to file any opposition to Respondent's brief. (Doc. 35). However, the deadline provided has passed, and, to date, Petitioner has not filed a response to Respondent's April 13, 2017 memorandum. As a result, Petitioner has not established that he was "in custody" for Counts 2, 4, 5, and 8 when he instituted the above-captioned action. <u>Rogers</u>

1.    <u>Sufficiency of the Evidence</u>

Petitioner claims that his right to due process was violated because the evidence presented at trial was insufficient to support his convictions. Specifically, he argues that "in the context of showing that the state court [] 'confront[ed] facts that are materially indistinguishable from" <u>Jackson v. Virginia</u>, 443 U.S. 307, 318-19 (1979). (Doc. 7, p. 13) (citing <u>Williams v. Taylor</u>, 529 U.S. 326, 405 (2000)). "Therefore," Petitioner contends, "this Court must first decide whether or not that 'the facts of his case are materially indistinguishable from <u>Jackson</u>.'" (<u>Id.</u> at p. 14). According to Petitioner, "[i]n the current case, the Superior Court confronted these facts that are 'materially indistinguishable under <u>Jackson</u>." (<u>Id.</u>). Petitioner argues that "this Court is compelled to di[s]miss the conviction on charge 'Endangering the Welfare of a Child.'" (<u>Id.</u>).

---

<u>v. Mahally</u>, 2016 U.S. Dist. LEXIS 75702, at *6 (E.D. Pa. June 9, 2016) (citing <u>Steel Co. v. Citizens for a Better Environment</u>, 523 U.S. 83, 94-95 (1998)); <u>see</u> FEDERAL HABEAS MANUAL § 1:13 (May 2016) ("the petitioner is not in custody on a concurrent sentence that has expired"); <u>Bussie v. New Jersey</u>, 2014 U.S. Dist. LEXIS 151441, at *13-14 (D.N.J. Oct. 24, 2014) (finding that the petitioner's concurrent sentences that "have long expired" do not satisfy the "in custody" requirement); <u>Hatcher v. Ricci</u>, 2010 U.S. Dist. LEXIS 76608, at *33-34 n.9 (D.N.J. July 29, 2010) (finding that the petitioner's concurrent sentence "expired long before [his] filing of the Petition, and that this Court is without jurisdiction to entertain any" challenges to the expired sentences "since [the petitioner] is no longer 'in custody,' within the meaning of" 28 U.S.C. § 2254(a)); <u>see also</u> <u>Maleng v. Cook</u>, 490 U.S. 488, 492 (1989); <u>United States v. Ross</u>, 801 F.3d 374, 382-83 (3d Cir. 2015). Since only Counts 1 and 6 were unexpired at the time Petitioner filed his federal habeas petition on February 18, 2015, those are the only Counts that can satisfy the "in custody" requirement found in section 28 U.S.C. § 2254(a). Thus, Petitioner's habeas claims concerning Counts 2, 4, 5, and 8 will not be considered because Petitioner was not "in custody" on those Counts at the time he filed his original petition as required by section 2254(a).

Petitioner also argues that "[t]he State Court decision was an 'unreasonable application' of <u>Jackson</u> where the Superior Court addressed two of [Petitioner's] convictions for PWID and Endangering the Welfare of a Child." (Doc. 7, p. 14). Petitioner claims that "the State Court adjudication of his sufficiency of the evidence challenge was an unreasonable application of <u>Jackson</u>." (<u>Id.</u> at p. 15). Petitioner states that "[t]he Superior Court decision merely addressed the <u>Jackson</u> on two of [his] convictions," namely PWID cocaine and Endangering the Welfare of a Child. (<u>Id.</u>). "Comprehensively, however, Petitioner recognizes that the Court may find 'the minimum amount of evidence that the Due Process requires to prove the offense is purely a matter of federal law.'" (<u>Id.</u>) (quoting <u>Coleman v. Johnson</u>, 132 S. Ct. 2060, 2064 (2012)).

As to his conviction of PWID cocaine, Petitioner argues that "this is strong case under <u>Jackson</u>." (<u>Id.</u> at p. 16). "In short," Petitioner contends, his "conviction for [PWID] cocaine was based on nothing more than 'speculation and conjecture' and his 'mere presence' at the Ms. Gonzalez residence." (<u>Id.</u> at p. 15). Thus, Petitioner concludes, "[i]t was objectively unreasonable for the Pennsylvania Superior Court to decide that a rational jury could have found [Petitioner] guilty of [PWID]." (<u>Id.</u>). Petitioner continues by claiming that "because a rational jury could not have inferred that [Petitioner] 'exercised

dominion or control' of the contraband seized because 'there is no evidence to suggest that actually 'shared the residence with Ms. Gonzalez.'" (Doc. 7, p. 17). Petitioner, again, "maintains that he was 'merely present,'" and asserts that the "Superior Court conceded that 'the cocaine was not found on [Petitioner's] person." (Id.). Petitioner continues by stating that "[n]o where in the record does it suggest that [Petitioner] rented the apartment with Ms. Gonzalez." (Id.). "Moreover," Petitioner asserts, "'the search warrant in this case specifically targeted and, further, listed the name: Ms. Gonzalez." (Id. at pp. 17-18) (citing Hawkins, 880 A.2d 678 (Pa. Super. Ct. 2005)). According to Petitioner, the "residence is an 'apartment that was being leased to Ms. Gonzalez.'" (Id. at p. 18). Therefore, Petitioner argues, "[t]he conviction for PWID cannot stand under Jackson." (Id.).

Further, under 2254(d)(2), Petitioner claims, the Pennsylvania Superior Court's determination that Petitioner "constructively possessed cocaine with intent to deliver was an objectively unreasonable one." (Id.). Petitioner continues by arguing that the Superior Court's determination that "'the police discovered cocaine in the bedroom [Petitioner] shared with Gonzalez' was an objectively unreasonable determination of the facts under" section 2254(d)(2). (Id.). According to Petitioner, he has provided clear and convincing evidence "to show

that '[he] did not reside at the residence with Ms. Gonzalez.'" (Doc. 7, p. 18). "Specifically," Petitioner contends, "first, the search warrant targeted Ms. Gonzalez and Johnathon Moss.'" (Id.). "[S]econd," Petitioner states, "the record reflects that the residence was being leased to Ms. Gonzalez . . . ." (Id.). "[F]inally, the record reflects that 'Arecelis Gonzalez and Johnathon Moss were either the owner/occupant of the said residence to be searched.'" (Id. at p. 19). Petitioner also contends that "[i]t is . . . important to note that the record reflects that '[Petitioner] resides in the City of New York.'" (Id.). Petitioner also states that "Moss testified that '[Petitioner] does not reside at the Ms. Gonzalez residence.'" (Id.). "Because of these facts," Petitioner argues, "'the court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement.'" (Id.) (quoting Harrington, 131 S. Ct. at 786-78). "Thus," Petitioner concludes, "no rational jury could conclude or infer that [Petitioner] constructively possessed the cocaine with intent to deliver, where contraband seized, was located and recovered on 'Ms. Gonzalez's premise or property.'" (Id.).

Petitioner then argues that a reasonable jury could not have found him guilty of Endangering the Welfare of a Child. (Id. at pp. 19-22). Specifically, Petitioner

argues that the Pennsylvania Superior Court made an unreasonable determined of the facts when it found that Petitioner resided at the residence with Ms. Gonzalez. (Doc. 7, p. 21). According to Petitioner, this determination is not supported by the record. (Id.). Petitioner contends that "[t]here is nothing of record to show that '[Petitioner] resided at the residence with Ms. Gonzalez.'" (Id.). Petitioner argues that "the transcript that the Superior Court cited to reflects in relevant part, that [Petitioner] was in the residence." (Id.). "Nothing in the record," Petitioner contends, "reflects that [he] shared the residence with Gonzalez." (Id.). "As such, the state court decision was overwhelmingly 'objectively unreasonable' under Jackson." (Id.). Moreover, Petitioner argues that "[n]o rational jury could infer that [Petitioner] was 'aware of his/her duty to protect the child,' or that he was 'aware that the child is in circumstances that could threaten the child's physical or psychological welfare and/or that [Petitioner] 'failed to act or taken so lame meager that such actions cannot reasonably be expected to protect the child's welfare, as articulated in Wallace . . . ." (Id.). Petitioner claims that "[i]t is well established above that this part of the record that the Superior Court cited to evidence of [Petitioner's] 'mere presence.'" (Id. at p. 22). According to Petitioner, "[a]bsolutely a rational jury could not infer that [Petitioner] 'supervised this child.'" (Id.). Petitioner also contends that "[t]here also [is] no evidence that

the child resided with Ms. Gonzalez at her residence." (Doc. 7, p. 22). As a result, Petitioner states that the Court is "compelled to find that this conviction cannot stand under <u>Jackson</u>." (<u>Id.</u>).

Petitioner also claims that a reasonable jury could not have found him guilty of criminal conspiracy to commit PWID. (<u>Id.</u> at pp. 22-24). In particular, Petitioner argues that "a rational jury could not conclude that [Petitioner] 'entered into an agreement to commit or aid in an unlawful act with' Ms. Gonzalez." (<u>Id.</u> at p. 23). Additionally, Petitioner claims that he "should not be liable for the action of Ms. Gonzalez because he was 'merely present.'" (<u>Id.</u>). Moreover, Petitioner argues that he "did not 'share criminal intent' with Ms. Gonzalez." (<u>Id.</u>). In support of this argument, Petitioner states that "the record clearly establishes that '[Petitioner] does not reside at the apartment with Ms. Gonzalez.'" (<u>Id.</u>). Petitioner contends that "[t]here could not be a conspiracy between . . . Ms. Gonzalez and [Petitioner], where the search warrant, specifically, targeted Ms. Gonzalez and Mr. Moss." (<u>Id.</u>). Further, Petitioner states that he "was not named on the search warrant," nor was he "involved in any controlled buys." (<u>Id.</u>).

Petitioner reasserts that "[t]here was no inference or any evidence to suggest that [Petitioner] commited (<u>sic</u>) [the] offense criminal conspiracy to commit" PWID. (<u>Id.</u> at p. 24). According to Petitioner, he "was merely present," "did not

occupy this structure," and "[t]here was no agreement of any kind to infer that [Petitioner] conspired with Gonzalez to commit" PWID. (Doc. 7, p. 24). "As such," Petitioner concludes, "no rational jury could infer that [Petitioner] is guilty of criminal conspiracy to commit PWID." (Id.).

Petitioner then argues that no reasonable jury would have found him guilty of possession of a firearm with an altered manufacturer's number. (Id. at pp. 24-25). In support, Petitioner asserts that "[n]othing puts [Petitioner] in visible possession of a firearm." (Id. at p. 25). Moreover, Petitioner claims that the firearm "was altered when Johnothon Moss bought the gun." (Id.). Also, Petitioner states that "[h]ere, Moss clearly testified that 'this is my gun, not [Petitioner's].'" (Id.). According to Petitioner, he "was never visibly observed with a hand-gun," he did not "reside with Ms. Gonzalez," and "[t]he said handgun was unforeseeable for [him] to have any type of possession of a firearm." (Id.). "As a result," Petitioner concludes, "a rational jury could not conclude that [Petitioner] 'possessed a handgun' or that he 'altered the serial number.'" (Id.). Petitioner states that "[t]his conviction cannot stand under Jackson or Fiore." (Id.).

Finally, he claims he is innocent of the conviction for possession of a firearm with manufacturer's number obliterated. (Id.). Specifically, Petitioner

states that:

> in light of Newly-discovered evidence of Affiant's new
> charging document against Johnothon Moss, Moss's guilty
> plea, and sentencing order via a plea of guilt to Possession of
> the same exact firearm which resulted in the conviction of
> [Petitioner][, which] caused a Miscarriage of justice.

(Doc. 7, p. 37). Also in support of this claim, Petitioner notes that "Moss testified
that 'it was my gun, and not [Petitioner's].'" (Id.). "As a result," Petitioner
contends, he "was 'wrongfully convicted' and 'actually innocent,' as here,
subsequently, however, based on newly discovered evidence of Detective Munch
charging Mr. Moss with possession of a firearm with an Altered Manufacturer's
number,' and, ultimately, Moss had pleaded guilty to 'Possession of a firearm
Without a License,' M1, on January 25, 2012." (Id.). This new evidence,
Petitioner claims, "is 'new reliable . . . critical evidence that was not presented at
trial, and shows that no reasonable juror would have voted to find [Petitioner]
guilty beyond a reasonable doubt, to satisfy the standard set forth in Mills v.
Carroll[], 515 F. Supp. 2d 463 (3d Cir. 2007)." (Id. at p. 38).

Respondent responds by stating that "an issue is waived if a petitioner fails
to raise it and the issue could have been raised before trial, at trial, on appeal, in a

habeas proceedings, or in a prior proceeding.[3]  (Doc. 31, p. 25) (citing <u>Smith v. Lamas</u>, 2011 U.S. Dist. LEXIS 136025 (E.D. Pa. Nov. 28, 2011)).  In regards to Petitioner's sufficiency of the evidence claim, Respondent begins by noting that when that claim was addressed by the Pennsylvania Superior Court "that . . . issue was waived."  (<u>Id.</u> at p. 28).  Respondent also notes that this claim lacks merit because the convictions were supported by sufficient evidence.  (<u>Id.</u> at pp. 28-38).

### a.    Exhaustion and Procedural Default

As stated, Petitioner was convicted of possession with intent to deliver ("PWID") cocaine; criminal conspiracy; possession of cocaine, drug paraphernalia, and a firearm; and endangering the welfare of a chid.  Petitioner filed a direct appeal of his conviction.  Petitioner argued, <u>inter alia</u>, that the verdict was reached upon insufficient evidence.  (Doc. 31-18).

In addressing Petitioner's direct appeal, the Pennsylvania Superior Court assessed, <u>inter alia</u>, Petitioner's claim that "'[t]he verdict was reached upon insufficient evidence.'"  <u>Pugh</u>, No. 1165 EDA 2011, at p. 4.  The Superior Court determined that this claim was waived.  <u>See</u> <u>Id.</u> at pp. 4-5.  Alternatively, it found

---

[3] Even if Respondent did not raise procedural default, according to the United States Court of Appeals for the Third Circuit, "a federal court has the authority to raise the issue of procedural default <u>sua sponte</u>."  <u>Evans v. Sec'y Pa. Dep't of Corrs.</u>, 645 F.3d 650, 657 n.12 (3d Cir. 2011) (citing <u>Szuchon v. Lehman</u>, 273 F.3d 299, 321 n.13 (3d Cir. 2001)).

that this claim "would not merit relief." <u>Pugh</u>, No. 1165 EDA 2011, at p. 5.

When reaching its alternative findings concerning Petitioner's sufficiency of the evidence claim, the Superior Court determined that Petitioner appeared to be challenging the sufficiency of the evidence relating to his conviction of PWID cocaine and endangerment of the welfare of a child. <u>Id.</u> As for his claim that there was insufficient evidence to support a conviction of PWID to deliver cocaine, it was rejected as meritless by the Superior Court. <u>Id.</u> at p. 7. According to the Superior Court, "[a]lthough the cocaine was not found on [Petitioner's] person, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, it clearly supported the jury's finding that [Petitioner] constructively possessed the cocaine with the intent to deliver." <u>Id.</u> The Superior Court continued by stating that "[t]he evidence established that, immediately after the police announced the search, Detective Jacobsen observed [Petitioner] push an air conditioner out of a bedroom window." <u>Id.</u> "Shortly thereafter, the police found cocain scattered on the ground outside the window, and chunks of cocaine on the windowsill." <u>Id.</u> Additionally, the Superior Court stated that "[u]pon entering the home, the police discovered cocaine in the bedroom [Petitioner] shared with Gonzalez." <u>Id.</u> Thus, the Superior Court found, "[b]ased upon this evidence, a reasonable jury could conclude that [Petitioner] had the ability and intent to

exercise conscious control and dominion over the cocaine." Pugh, No. 1165 EDA 2011, at p. 7.

Moreover, the Superior Court noted that "[a]lso inside the bedroom, the police discovered [Petitioner] and Gonzalez, cocaine, three digital scales, large sums of cash, intact plastic bags, plastic bags with the corners cut off, and a Smith & Wesson .40 caliber handgun." Id. (internal citations omitted). The Superior Court also stated that "[n]o paraphernalia for the consumption of crack cocaine was found in the residence." Id. "Detective Bray, the Commonwealth's expert on drug trafficking," the Superior Court noted, "testified that the scales found in the bedroom could be used for weighing drugs." Id. at p. 8. According to the Superior Court, Detective Bray "testified further that the baggies with cut corners were consistent with the creation of packaging for crack cocaine sales." Id.

The Superior Court, "[v]iewing the foregoing evidence in the light most favorable to the Commonwealth," determined that "it was sufficient to enable the jury to find every element of the crime of [PWID] cocaine beyond a reasonable doubt." Id. (citing Commonwealth v. Palo, 24 A.3d 1050, 1054-55 (Pa. Super. Ct. 2011)). "Therefore," the Superior Court held, Petitioner's sufficiency of the evidence claim regarding hin PWID cocaine conviction lacked merit. Id.

Notably, "[i]n [Evans v. Court of Common Pleas of Delaware Cnty, 959

F.2d 1227 (3d Cir. 1992)], the Third Circuit held the test for sufficiency of the

evidence is the same under both Pennsylvania law and federal due process." Hall

v. Beard, 55 F. Supp. 3d 618, 696 (E.D. Pa. 2014) (citing Evans, 959 F.2d at 1231-

33). "A claim for sufficiency of the evidence is the 'substantial equivalent' of a

federal due process claim." Id. (quoting Evans, 959 F.2d at 1233). "In addition,

the Third Circuit in Evans held that a petitioner's due process claim had also been

exhausted because the assertion of the state-law claim 'call[s] to mind a specific

right protected by the Constitution.'" Id. (quoting Evans, 959 F.2d at 1233; citing

McCandless v. Vaughn, 172 F.3d 255 (3d Cir. 1999)).

As discussed above, a petitioner must generally comply with the exhaustion

requirement of 28 U.S.C. § 2254(b)(1)(A), before a federal court can consider the

merits of his habeas corpus petition. As a result, the question becomes whether

Petitioner properly exhausted his sufficiency of the evidence claim.[4] Here,

Petitioner's brief in support of his direct appeal cites the due process standard set

forth in Jackson. Specifically, Petitioner identified the following as the applicable

standard for reviewing the sufficiency of the evidence: "whether all the evidence

---

[4] Notably, in his amended petition, Petitioner appears to concede that his sufficiency of
the evidence claims are procedurally defaulted. (Doc. 7, pp. 25-30). Nevertheless, to the extent
that Petitioner does not concede that his sufficiency of the evidence claim has been procedurally
defaulted, the Court will address the procedural default issue. See Bey v. Superintendent Greene
SCI, 856 F.3d 230, 236-38 (3d Cir. 2017).

admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." Appellant's Brief, Pugh, No. 1165 EDA 2011, p. 11; see (Doc. 31-18, p. 15). "Because the standard is identical, '[n]either federal-state comity nor judicial economy would be better served by requiring [petitioner] to return to the state courts simply because [his state court briefs] do not include a "see also" citation to Jackson v. Virginia.'" Hall, 55 F. Supp. 3d at 686 (alterations in original) (quoting Johnson v. Mechling, 541 F. Supp. 2d 651, 665 (M.D. Pa. 2008) (Jones, J.)).

However, even assuming, without deciding, that Petitioner adequately presented his sufficiency of the evidence claims to the Superior Court, "[d]efault can also occur independently of exhaustion." Romansky v. Folino, 2017 U.S. Dist. LEXIS 28405, at *32 (M.D. Pa. Mar. 1, 2017) (Rambo, J.). "Procedural default occurs when 'the prisoner ha[s] failed to meet a state law procedural requirement.'[footnote omitted]" Bey v. Superintendent Greene SCI, 856 F.3d 230, 236 (3d Cir. 2017); see Branthafer v. Glunt, 2015 U.S. Dist. LEXIS 126142, at *18-19 (M.D. Pa. Sept. 22, 2015) (Conaboy, J.) (citing Leyva v. Williams, 504 F.3d 357, 365 (3d Cir. 2007)). "'The doctrine of procedural default prohibits federal courts from reviewing a state court decision involving a federal question if

the state court decision is based on a rule of state law that is independent of the federal question and adequate to support the judgment.'[footnote omitted]" Bey, 856 F.3d at 236 (quoting Fay v. Horn, 516 F.3d 169, 187 (3d Cir. 2008)). "The requirements of independence and adequacy are distinct." Branthafer, 2015 U.S. Dist. LEXIS 126142, at *19 (citing Leyva, 504 F.3d at 365).

"A state procedural rule is 'independent' if it is separate from the federal issue." Leake v. Dillman, 594 F. App'x 756, 758 (3d Cir. 2014). "[A] state procedural rule is adequate if it was 'firmly established and regularly followed' at the time of the alleged procedural default." Id. at 759 (citing Ford v. Georgia, 498 U.S. 411, 424 (1991)). "To be considered firmly established and regularly followed, '(1) the state procedural rule [must] speak[] in unmistakable terms; (2) all state appellate courts [must have] refused to review the petitioner's claims on the merits; and (3) the state court's refusal in this instance [must be] consistent with other decisions.'" Id. (quoting Nara v. Frank, 488 F.3d 187, 199 (3d Cir. 2007)); see also Johnson v. Pinchak, 392 F.3d 551, 559 (3d Cir. 2004) (quoting Banks v. Horn, 126 F.3d 206, 211 (3d Cir. 1997)).

"Ordinarily, the 'adequacy' of the state procedural rule does not include an inquiry into whether the state erroneously applied its own rule in a particular case–'courts have repeatedly counseled [this] is not a cognizable claim on

habeas.'" Branthafer, 2015 U.S. Dist. LEXIS 126142, at *19-20 (alteration in original) (quoting Tillery v. Horn, 142 F. App'x 66, 68 (3d Cir. 2005)). "Reviewing a § 2254 petition, a federal court 'ordinarily may not second guess a state court's rejection of a claim on the basis of an independent and adequate state procedural rule.'" Id. at *20 (quoting Logan v. Gelb, 790 F.3d 65, 70 (1st Cir. 2015)). However, "a reviewing court must keep in mind that there are '"exceptional circumstances in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question."'" Id. at *21 (quoting Rolan v. Coleman, 680 F.3d 311, 317 (3d Cir. 2012)).

"The requirement that Petitioner must meaningfully develop his arguments on appeal and cite to appropriate authorities has been stated in unmistakable terms by the Pennsylvania Supreme Court." Id. (citing Commonwealth v. Clayton, 572 Pa. 395 (Pa. 2002)). Moreover, "[t]he fact that the Superior Court, alternatively, found that Claim One lacked merit . . . does not preclude reliance upon the procedural bar it identified." Lambert v. Folino, 2015 U.S. Dist. LEXIS 161701, at *10 n.5 (E.D. Pa. Nov. 30, 2015) (citing Harris v. Reed, 489 U.S. 255, 261 (1989)), adopted by, 2016 U.S. Dist. LEXIS 2103 (E.D. Pa. Jan. 8, 2016); see Branthafer, 2015 U.S. Dist. LEXIS 126142, at *39 n.13 ("The Superior Court's

consideration of the merits of the 13 claim in the margin is not considered for procedural default purposes. However, it would be a factor in the deference due under § 2254(d) if a merits analysis were warranted.") (citing Rolan v. Coleman, 680 F.3d 311, 319-21 (3d Cir. 2012)); Gerber v. Varano, 2015 U.S. Dist. LEXIS 110006, at *11-12 n.1 (M.D. Pa. Aug. 20, 2015) (Rambo, J.) (citing Harris, 489 U.S. at 264 n. 10); see also Johnson, 392 F.3d at 558 ("The fact that both the New Jersey trial court and Appellate Division made reference to the merits of the case as an alternative holding does not prevent us from finding procedural default."); Dreher v. AG, 273 F. App'x 127, 135 n.11 (3d Cir. 2008); Barnett v. Clark, 2017 U.S. Dist. LEXIS 12588, at *20-21 (E.D. Pa. Jan. 27, 2017); Knight, 2007 U.S. Dist. LEXIS 83546, at *16 ("[I]f the reviewing state court reached the merits as an alternative holding, the habeas court proceeds with the procedural default analysis") (citing Johnson, 392 F.3d at 558).

In assessing Petitioner's direct appeal, the Superior Court found that Petitioner's general sufficiency of the evidence claim had been waived as to all but the endangering the welfare of a child conviction, which was raised as a separate claim. Pugh, No. 1165 EDA 2011, at p. 4. In particular, the Superior Court noted that "[a] Rule 1925(b) statement challenging the sufficiency of the evidence must specify 'how the evidence failed to establish which element or elements of the []

offenses for which [Petitioner] was convicted . . . . Which elements of which offense were unproven?  What part of the case did the Commonwealth not prove?'" Pugh, No. 1165 EDA 2011, at p. 4 (second alteration in original) (quoting Commonwealth v. Williams, 959 A.2d 1252, 1257 (Pa. Super. 2008)). The Superior Court continued by noting that in Petitioner's "Rule 1925(b) statement, he challenges that the verdict was reached on insufficient evidence because he was not the subject of the arrest warrant, 'there was no evidence of direct buys involving [] [Petitioner][,]' and that the evidence 'only supports Simple Possession not [PWID].'" Id. at pp. 4-5 (first, third and fourth alterations in original).  The Superior Court determined that "[b]ecause [Petitioner's] statement does not identify which elements of his convictions were not proven, this issue is waived." Id. at p. 5.

The Superior Court went on to state that Petitioner's general sufficiency of the evidence claim was also waived because of his failure to comply with Pa. R.A.P. 2119(a)-(c). Id.  Specifically, the Superior Court stated that "in addressing [his sufficiency of the evidence claim], [Petitioner's] brief fails to include pertinent discussion identifying the elements of PWID that the Commonwealth allegedly failed to prove or citation to the record or pertinent authority." Id. "Although he provides general, boilerplate law on the level of certainty with

which the Commonwealth must establish a defendant's guilt, participation in a crime, and possession of contraband, [Petitioner] fails to provide pertinent authority on the specific crimes of which he was convicted." Pugh, No. 1165 EDA 2011, at p. 5. The Superior Court noted that Petitioner was "convicted . . . of five crimes in this matter." Id. "However," the Superior Court found, "he fails to state expressly which conviction he is contesting or to identify what elements the Commonwealth purportedly failed to establish." Id. "Accordingly, [Petitioner's] first issue also would be waived on that basis." Id.

"A procedural default occurs when a prisoner's federal claim is barred from consideration in the state courts by an 'independent and adequate' state procedural rule." Carpenter v. Vaughn, 296 F.3d 138, 146 (3d Cir. 2002). "The Pennsylvania Superior Court's finding of waiver under Rule 1925(b) has been found to be an adequate basis to invoke the procedural default doctrine." Branthafer, 2015 U.S. Dist. LEXIS 126142, at *41 (citing Buck v. Colleran, 115 F. App'x 526, 527-28 (3d Cir. 2004); Sidberry v. Fisher, 2015 U.S. Dist. LEXIS 81160 (W.D. Pa. June 23, 2015)); see Fudge v. Overmyer, 2015 U.S. Dist. LEXIS 31063, at *9 (M.D. Pa. Mar. 13, 2015) (Jones, J.) ("The rule of waiver for failing to properly raise an issue in a 1925(b) Statement is an independent and adequate state ground, and therefore results in [the petitioner] having procedurally defaulted on ineffective assistance

of counsel claims."). Additionally, courts within the Third Circuit have determined that a finding that a claim was waived for failure to comply with Pa. R.A.P. 2119 also is an independent and adequate state procedural rule which, if not complied with, can result in a procedural default. See Smith v. Cameron, 2017 U.S. Dist. LEXIS 74432, at *15-18 (M.D. Pa. May 16, 2017) (Jones, J.); see also Leake, 594 F. App'x at 759; Rodriguez v. Giroux, 2017 U.S. Dist. LEXIS 23447, at *37 n.17 (E.D. Pa. Feb. 17, 2017) (citing Sistrunk v. Vaughn, 96 F.3d 666, 673 (3d Cir. 1996); Quang Van Nguyen v. Wenerowicz, 2013 U.S. Dist. LEXIS 173586 (E.D. Pa. Dec. 10, 2013)); Alston v. Gilmore, 2016 U.S. Dist. LEXIS 110170, at *31-32 (E.D. Pa. Aug. 16, 2016), adopted by, 2016 U.S. Dist. LEXIS 180193 (E.D. Pa. Dec. 29, 2016); Prout v. Giroux, 2016 U.S. Dist. LEXIS 57085, at *40-43 (E.D. Pa. Apr. 29, 2016); Robertson v. Thompson, 2015 U.S. Dist. LEXIS (M.D. Pa. Jan. 25, 2015) (Kane, J.) (citing Leake, 594 F. App'x at 759). But see Xavier v. Superintendent Albion SCI, 2017 U.S. App. LEXIS 7881, at *5-8 (3d Cir. May 3, 2017) (non-precedential) (finding the petitioner had not procedurally defaulted under Pa. R.A.P. 2119(a) when he "provided detailed allegations and case law" in support of his claims).

As stated, the Superior Court relied on Rule 1925(b) and Pa. R.A.P. 2119 to determine that Petitioner waived his sufficiency of the evidence claim on direct

appeal as to his convictions of possession of intent to deliver cocaine; criminal

conspiracy; and possession of cocaine, drug paraphernalia, and a firearm with an

obliterated serial number, see Pugh, No. 1165 EDA 2011, at pp. 4-5.  As a result,

Petitioner's current sufficiency claim based on these convictions is barred from

consideration unless Petitioner proves that an exception to the default applies.[5]

See Solano v. Lamas, 2014 U.S. Dist. LEXIS 78452, at *16 (M.D. Pa. June 6,

2014) (Nealon, J.).

"When reviewing a state prisoner's petition for a writ of habeas corpus, a

federal court normally cannot review a federal claim for post-conviction relief that

---

[5] The Court notes that while the Superior Court determined that Petitioner's sufficiency of the evidence claim concerning all convictions except the endangering the welfare of a child conviction were waived under Pennsylvania Rules of Appellate Procedure 1925(b) and 2119, the Superior Court went on to discuss, in an alternative holding, the merits of Petitioner's sufficiency of the evidence claim concerning his conviction for PWID cocaine.  Pugh, 1165 EDA 2011, at pp. 5-8.  Nevertheless, the Court will proceed with a procedural default analysis as to this conviction. Lambert, 2015 U.S. Dist. LEXIS 161701, at *10 n.5 (citing Harris, 489 U.S. at 261), adopted by, 2016 U.S. Dist. LEXIS 2103; see Branthafer, 2015 U.S. Dist. LEXIS 126142, at *39 n.13 ("The Superior Court's consideration of the merits of the 13 claim in the margin is not considered for procedural default purposes.  However, it would be a factor in the deference due under § 2254(d) if a merits analysis were warranted.") (citing Rolan, 680 F.3d at 319-21); Gerber, 2015 U.S. Dist. LEXIS 110006, at *11-12 n.1 (citing Harris, 489 U.S. at 264 n. 10); see also Johnson, 392 F.3d at 558 ("The fact that both the New Jersey trial court and Appellate Division made reference to the merits of the case as an alternative holding does not prevent us from finding procedural default."); Dreher, 273 F. App'x at 135 n.11; Barnett, 2017 U.S. Dist. LEXIS 12588, at *20-21; Knight, 2007 U.S. Dist. LEXIS 83546, at *16 ("[I]f the reviewing state court reached the merits as an alternative holding, the habeas court proceeds with the procedural default analysis") (citing Johnson, 392 F.3d at 558).  While the Court addresses Petitioner's sufficiency of the evidence claim concerning his PWID cocaine conviction under procedural default, the Court, as done by the Superior Court during Petitioner's direct appeal, will also address, in the alternative, the merits of that claim below.

has already been rejected by a state court on the basis of an independent and adequate state procedural rule." Cox v. Horn, 757 F.3d 113, 118-19 (3d Cir. 2014) (citing Walker v. Martin, 562 U.S. 307 (2011); Coleman v. Thompson, 501 U.S. 722, 750 (1991)). "As explained by the Third Circuit Court of Appeals, a procedural default rule 'prevents an end-run around the exhaustion requirement.'" Toney v. United States, 2016 U.S. Dist. LEXIS 142375, at *5 (M.D. Pa. Oct. 14, 2016) (Conaboy, J.) (Spruill v. Gillis, 372 F.3d 218, 230 (3d Cir. 2004)). "A petitioner may obtain federal review of a procedurally defaulted claim, however, if he demonstrates cause for the default and prejudice arising from the violation of federal law." Cox, 757 F.3d at 119 (citing Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012)). Additionally, procedurally defaulted claims may also be considered where the Petitioner demonstrates that failure to consider the claim would result in a fundamental miscarriage of justice. See Coleman, 501 U.S. at 750; Harris, 489 U.S. at 260-63; Morris, 187 F.3d at 342.

"To demonstrate 'cause' for a procedural default, he must point to some objective external factor which impeded his efforts to comply with the state's procedural rule." Madden v. Mooney, 2016 U.S. Dist. LEXIS 176236, at *5 (M.D. Pa. Dec. 21, 2016) (Conner, J.) (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)). "'Prejudice' will be satisfied only if he can demonstrate that the outcome

of the state proceeding was 'unreliable or fundamentally unfair' as a result of a violation of federal law." Madden, 2016 U.S. Dist. LEXIS 176236, at *5 (citing Lockhart v. Fretwell, 506 U.S. 364, 366 (1993)).

"To show a fundamental miscarriage of justice, a petitioner must demonstrate that he is actually innocent of the crime . . . ." Keller v. Larkins, 251 F.3d 408, 415-16 (3d Cir.), cert. denied, 543 U.S. 973 (2001). This exception is "concerned with 'actual innocence.'" Cristin v. Brennan, 281 F.3d 404, 420 (3d Cir.), cert. denied, 537 U.S. 897 (2002). "Actual innocence means factual innocence, not legal insufficiency." Daniels v. Overmyer, 2016 U.S. Dist. LEXIS 71476, at *23-24 (M.D. Pa. June 1, 2016) (Kosik, J.) (citing Bousley v. United States, 523 U.S. 614, 623 (1998)). "'[A] petitioner asserting actual innocence . . . must rely on "reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence"['] not presented at trial." Id. at *24 (quoting Munchinski v. Wilson, 694 F.3d 308, 337-38 (3d Cir. 2012)). "New evidence which tends to undermine the credibility of a witness 'will seldom, if ever, make a clear and convincing showing that no reasonable juror would have believed the hear of [the witness'] account of petitioner's actions." Id. (citing Sawyer v. Whitley, 505 U.S. 333, 349 (1992)). Further, "[i]t is a stronger showing than that needed to establish prejudice." Branthafer, 2015 U.S. Dist.

LEXIS 126142, at *21.  Thus, "[t]his standard 'does not require absolute certainty about petitioner's guilt or innocence', but it permits review only in the 'extraordinary case.'"  Englert, 2015 U.S Dist. LEXIS 67546, at *17 (quoting House v. Bell, 547 U.S. 518, 538 (2006)).

> In Martinez, the Supreme Court held that, where state law requires a prisoner to raise claims of ineffectiveness assistance of trial counsel in a collateral proceeding, rather than on direct review, a procedural default of those claims will not bar their review by a federal habeas court if three conditions are met: (a) the default was caused by ineffective assistance of post-conviction counsel or the absence of counsel (b) in the initial-review collateral proceeding (i.e., the first collateral proceeding in which the claim could be heard) and (c) the underlying claim of trial counsel ineffectiveness is 'substantial,' meaning 'the claim has some merit,' analogous to the substantiality requirement for a certificate of appealability.

Cox, 757 F.3d at 119 (quoting Martinez, 132 S. Ct. at 1318-20).

Here, Petitioner argues that "a federal court may consider a claim that would otherwise be procedurally defaulted if a petitioner did not exhaust his claim on collateral review due to ineffective assistance of counsel."  (Doc. 7, p. 25) (citing Martinez, 132 S. Ct. at 1311).  He states that "[a] petitioner can satisfy the 'cause' prong of the two-factor Coleman test if he failed to raise a claim in his collateral proceedings due to the ineffectiveness of his PCRA counsel; however, that does not mean that he necessarily satisfies the 'actual prejudice' requirement."  (Id. at

pp. 25-26) (quoting <u>Martinez</u>, 132 S. Ct. at 1319). Petitioner continues by noting that "'[t]o overcome the default, a prisoner meet also demonstrate that the underlying ineffective assistance of [direct appeal] is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.'" (Doc. 7, p. 26) (second alteration in original).

Petitioner contends that his "insufficient of the evidence claim(s) does fall within the <u>Martinez</u> exception because his failure to bring the claim was a product of ineffective assistance of counsel during his collateral proceeding." (<u>Id.</u>). According to Petitioner, the "actions by counsel during the Post Conviction proceeding coupled with PCRA Appeal Counsel's ineffectiveness for failing to raise on PCRA Appeal claims of Direct appeal counsel's ineffectiveness for failing to properly raise the Insufficient-Evidence claims on concerning all of [Petitioner's] convictions." (<u>Id.</u> at p. 27).

As for prejudice, Petitioner argues that "it is clear that [he] satisfies factors two, three, and four of the <u>Trevino</u> test." (<u>Id.</u>). "As for the second factor," Petitioner contends, "he was unable to raise the claims of his direct appellate counsel because of his PCRA Counsel's ineffectiveness." (<u>Id.</u>). Petitioner continues by stating that "[a]s for the third factor, the error took place during [Petitioner's] initial PCRA proceeding." (<u>Id.</u>). "[A]s to the fourth factor,

Pennsylvania law required that [Petitioner] raise the ineffectiveness of trial or appellate counsel claim in PCRA Court instead of direct appeal." (Doc. 7, p. 27) (citing 42 Pa. C.S.A. § 9543(a)(2)(ii)).

Petitioner contends that "'but for' counsel's unprofessional errors there was 'reasonable probability' that Pennsylvania Superior and/or PA Supreme Court would have vacated and dismissed [Petitioner's] convictions for PWID, Conspiracy to commit PWID, Possession of a Firearm with an Altered Serial Number and Endangering the Welfare of a Child." (Id. at pp. 29-30). According to Petitioner, "[t]hese charges would have been dismissed, if Counsel sufficiently raised the Jackson claim on direct appeal challenging all of [Petitioner's] convictions herein, there causing a waiver and deficient review by the state court." (Id. at p. 30). Petitioner contends that "Counsel['s] deficient performance 'actually prejudiced' [Petitioner] because the Jackson Insufficient of the Evidence claim was not properly factual or legally raised, Counsel action/inaction contributed to upholding the wrongful guilty verdict against" Petitioner. (Id.). Petitioner states that "[t]hese actions show actual prejudice; furthermore, the force and effect of Jackson being raised in the state court proceedings would have resulted in the convictions being reversed, vacate, dismissal of all or majority of the charge(s) against" Petitioner. (Id.).

The Supreme Court of the United States has held "[a] claim of ineffective assistance' . . . generally must 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." Murray v. Carrier, 477 U.S. 478, 490-92 (1986). The Supreme Court has also held that "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted . . . ." Edwards v. Carpenter, 529 U.S. 446, 453 (2000).

Here, Petitioner presented a number of ineffective assistance claims in his collateral proceedings. See Pugh, No. 3134 EDA 2013, at p. 3. Specifically, as noted by the Pennsylvania Superior Court, Petitioner claimed that his trial counsel was ineffective "for the following reasons: (1) for failing to interview Moss before questioning him at [Petitioner's] trial; (2) for failing to call Gonzalez as a witness at [Petitioner's] trial; and (3) for preventing [Petitioner] from exercising his right to testify at trial." Id. Noticeably absent from his collateral proceeding is a claim that his direct appeal counsel was ineffective for failing to properly raise a sufficiency of the evidence claim. See Id.; (Doc. 31-21).

As stated, the Supreme Court established "a 'narrow exception' whereby '[i]nadequate assistance of counsel at initial review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective

assistance at trial.'" Gonzalez v. Superintendent Graterford SCI, 655 F. App'x 96,

100 (3d Cir. 2016) (alteration in original) (quoting Martinez, 132 S. Ct. at 1315).

"When a state requires a prisoner to raise an ineffective-assistance-of-trial-counsel

claim in a collateral proceeding, a prisoner may establish cause for a default of the

[ineffective assistance] claim if (i) 'the state courts did not appoint counsel in the

initial-review collateral proceeding,' or (ii) 'appointed counsel in the initial-review

collateral proceeding . . . was ineffective under the standards of Strickland v.

Washington . . . .'" Id. (emphasis in original) (quoting Martinez, 132 S. Ct. at

1318).

Here, as noted above, Petitioner appears to concede that he has procedurally

defaulted his sufficiency of the evidence claim concerning his conviction for, inter

alia, PWID and possession of a firearm with an obliterated serial number.

However, argues that his procedural default should be excused because Martinez

applies. Therefore, Petitioner concludes, his insufficiency of the evidence claim

concerning PWID and possession of a firearm with an obliterated serial number

should be considered on the merits. See (Doc. 32, pp. 3-4). Specifically,

Petitioner contends that he "extensively argues 'cause' and 'actual prejudice' to

excuse procedural default covered by the four prongs set forth under the T[r]evino

test." (Id. at p. 3). Petitioner continues by stating that he has "met the burden of

proving the <u>Trevino</u> test . . . . [and] [b]ecause the petitioner has produced enough evidence to satisfy the <u>Martinez</u> . . . exception . . . . [his] 14th Amendment due process violation under <u>Jackson</u> claim is 'excused of procedural default.'" (Doc. 32, p. 3). "Because the petitioner plead and proved the 'cause' <u>Coleman</u>, <u>Martinez</u>, and <u>Trevino</u> test" he contends, he has proven, "ultimately, 'the actual prejudice' requirement." (<u>Id.</u>). In particular, Petitioner states that as for his insufficiency of the evidence claim his "appellate counsel insufficiently raised the insufficient evidence claim on direct appeal to the Superior Court of Pennsylvania." (<u>Id.</u> at p. 5). Subsequent to the Superior Court's decision to deny Petitioner's appeal, he claims that "appellate counsel refused to file a petition for allowance of appeal before the Supreme Court of Pennsylvania, after requested to do so." (<u>Id.</u>). Petitioner states that in his <u>pro se</u> PCRA petition he "raised claim of ineffectiveness by direct appeal counsel for failing to raise or preserve the insufficient evidence claim." (<u>Id.</u>). Petitioner continues by arguing that he "has shown two factors: 'good cause for his default and actual prejudice resulting from the alleged legal violation." (<u>Id.</u>) (citing <u>Coleman</u>, 501 U.S. at 748). "Thus," Petitioner concludes, his PCRA counsel "failed to exhaust <u>Jackson</u> claim." (<u>Id.</u>) (citing <u>Coleman</u>, 501 U.S. at 748).

Petitioner is apparently making an attempt to excuse the procedural default

of his <u>Jackson</u> claims by pointing to <u>Martinez</u>.  "[I]mportantly," however, "in order

to exhaust a claim, 'state prisoners must give the state courts one full opportunity

to resolve any constitutional issues by invoking one complete round of the State's

established appellate review process.'"  <u>Mayer v. Attorney Gen. of the State of Pa.</u>,

2016 U.S. Dist. LEXIS 89549, at *4-5 (W.D. Pa. July 8, 2016) (quoting

<u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999)).  "In Pennsylvania, this

requirement means that a petitioner in a non-capital case must have presented

every federal constitutional claim raised in his habeas petition to the Superior

Court of Pennsylvania either on direct or PCRA appeal."  <u>Id.</u> at *5 (citing <u>Lambert</u>

<u>v. Blackwell</u>, 387 F.3d 210, 233-34 (3d Cir. 2004)).

Recently, the United States Court of Appeals for the Third Circuit stated

that:

> Pursuant to the Supreme Court's decision in <u>Martinez v. Ryan</u>,
> counsel's failure to raise an ineffective assistance claim on
> collateral review may excuse a procedural default if: "(1)
> collateral attack counsel's failure itself constituted ineffective
> assistance of counsel under <u>Strickland</u>, and (2) the underlying
> ineffective assistance claim is a 'substantial one.'"

<u>Bey</u>, 856 F.3d at 237-38 (internal footnotes omitted).  Initially, thus, the question

is whether <u>Martinez</u> applies to Petitioner's claim of ineffective assistance of his

direct appeal counsel.  As noted, Petitioner is claiming that the alleged error was

committed by his PCRA counsel when he failed to raise an ineffective-assistance claim before the PCRA court for counsel's failure to properly raise the sufficiency of the evidence claim during Petitioner's direct appeal.  <u>See</u> (Doc. 32, pp. 3-4).

In <u>Robertson v. Pa. Attorney Gen.</u>, 2014 U.S. Dist. LEXIS 141871 (M.D. Pa. Oct. 3, 2014) (Nealon, J.), the Undersigned discussed the applicability of <u>Martinez</u> to the petitioner's claim that he received ineffective assistance during collateral review because his PCRA counsel failed to argue the petitioner's direct appeal counsel provided constitutionally defective representation.  <u>Id.</u> at *20-21. The Undersigned determined that the petitioner could not rely on <u>Martinez</u> to overcome the procedural default for those claims concerning ineffective assistance of direct appeal counsel because "<u>Martinez</u> does not apply to allegations that PCRA counsel was ineffective in advancing the claim that direct appeal counsel in the state courts rendered constitutionally defective representation."  <u>Id.</u>

Since, the Undersigned's decision in <u>Robertson</u>, the majority opinion remains that <u>Martinez</u> does not apply to claims of ineffective assistance of direct appeal counsel.  Specifically, in <u>Bush v. Giroux</u>, 2016 U.S. Dist. LEXIS 122932 (W.D. Pa. Sept. 12, 2016), the United States District Court for the Western District of Pennsylvania discussed the petitioner's reliance on <u>Martinez</u>.  <u>Id.</u> at *31-33. According to the court, "[t]he [p]etitioner relies upon <u>Martinez</u> to establish 'cause'

for his default, but it does not assist him." Bush, 2016 U.S. Dist. LEXIS 122932, at *32. The court noted that the petitioner's claim was "a claim that direct appeal counsel was ineffective, and Martinez's limited holding only applies to assist a habeas petitioner overcome the default of a claim that trial counsel was ineffective." Id. (citing Martinez, 132 S. Ct. at 1319; Brian R. Means, FEDERAL HABEAS MANUAL § 9B:62, WestlawNext (updated May 2016) ("To date, the vast majority of circuit courts that have considered the issue have declined to extend Martinez to claims involving the ineffective assistance of appellate counsel.").

Similarly, in Richardson v. Wenerowicz, 2017 U.S. Dist. LEXIS 3709 (W.D. Pa. Jan. 9, 2017), it was noted that "Martinez v. Ryan is limited to defaults in collateral proceedings caused by ineffective counsel at the trial level, not in appeals." Id. at *26 (citing Norris v. Brooks, 794 F.3d 401, 404-05 (3d Cir. 2015), cert. denied, 136 S. Ct. 1227 (2016)); see Boggs v. Rozum, 2017 U.S. Dist. LEXIS 2322, at *24 (W.D. Pa. Jan. 5, 2017) (citing Norris, 794 F.3d at 404-05); Greene v. Link, 2016 U.S. Dist. LEXIS 167615, at *12 (E.D. Pa. Nov. 30, 2016); Jordan v. Rozum, 2016 U.S. Dist. LEXIS 136733, at *13-19 (E.D. Pa. Oct. 3, 2016); LeBlanc v. Trice, 2016 U.S. Dist. LEXIS 100392, at *20-21, adopted by, 2016 U.S. Dist. LEXIS 171188 (E.D. Pa. Dec. 9, 2016); Williams v. Sauers, 2014 U.S. Dist. LEXIS 182386, at *40, adopted by, 2015 U.S. Dist. LEXIS 22395 (E.D. Pa.

Feb. 25, 2015); <u>House v. Warden</u>, 2015 U.S. Dist. LEXIS 96882 (M.D. Pa. July 24, 2015) (Kosik, J.).

In <u>Allam v. Harry</u>, 2017 U.S. Dist. LEXIS 51286 (M.D. Pa. Apr. 4, 2017) (Caldwell, J.), Judge Caldwell addressed whether <u>Martinez</u> applied to the "alleged ineffectiveness of direct-appeal counsel . . . ." <u>Id.</u> at *17.  As noted in <u>Allam</u>, "[a]fter <u>Martinez</u> was decided, the question arose as to whether its holding applied only to defaulted claims of ineffective assistance of trial counsel, or also to defaulted claims of ineffectiveness of direct-appeal counsel." <u>Id.</u>  Judge Caldwell continued by noting that "there is a circuit split on this issue," and that "[a]lthough the Third Circuit has yet to weigh in, nearly all of the circuits that have addressed the issue favor a narrow reading of <u>Martinez</u>." <u>Id.</u> at *17-18 (citing <u>Long v. Butler</u>, 809 F.3d 299, 314-15 (7th Cir. 2015), <u>reh'g granted</u>, <u>vacated</u> <u>on</u> <u>other</u> <u>grounds</u>, 2016 U.S. App. LEXIS 7120 (7th Cir. Apr. 20, 2016); <u>Dansby v. Hobbs</u>, 766 F.3d 809, 833 (8th Cir. 2014); <u>Reed v. Stephens</u>, 739 F.3d 753, 778 n.16 (5th Cir. 2014); <u>Hodges v. Colson</u>, 727 F.3d 517, 531 (6th Cir. 2013); <u>Banks v. Workman</u>, 692 F.3d 1133, 1148 (10th Cir. 2012)).  "Only the Ninth Circuit has held that <u>Martinez</u> applies to claims of ineffective assistance of direct-appeal counsel." <u>Id.</u> at *18 (citing <u>Ha Van Hguyen v. Curry</u>, 736 F.3d 1287, 1295 (9th Cir. 2013)).  Judge Caldwell also noted that "[c]ourts in this district and in the

other districts in Pennsylvania have consistently followed the majority view."
Allam, 2017 U.S. Dist. LEXIS 51286, at 18 (citing Robertson v. Pa. Attorney
Gen., 2014 U.S. Dist. LEXIS 141871 (M.D. Pa. Oct. 3, 2014) (Nealon, J.); Jordan
v. Rozum, 2016 U.S. Dist. LEXIS 136733 (E.D. Pa. Oct. 3, 2016); Bush, 2016
U.S. Dist. LEXIS 122932 (W.D. Pa. Sept. 12, 2016); Ridgeway v. Folino, 2014
U.S. Dist. LEXIS 188738 (E.D. Pa. Jan. 28, 2014)).  Judge Caldwell stated that
"[i]n accord with the vast majority of circuit courts and Pennsylvania district
courts that have addressed this issue, this court finds that Martinez's narrow
exception applies only to claims of ineffectiveness of trial counsel and does not
extend to claims of ineffectiveness of direct-appeal counsel."  Id. at *18-19.  "As
such," Judge Caldwell concluded, "Petitioner cannot show cause to excuse the
procedural default of the sufficiency-of-the-evidence claim."  Id. at *19; see
Spivey v. Gilmore, 2017 U.S. Dist. LEXIS 84014 (D.N.J. May 31, 2017).

As noted by Judge Caldwell in Allam, contrary to the aforementioned cases
that have narrowed Martinez to exclude ineffective assistance claims against direct
appeal counsel, the United States Court of Appeals for the Ninth Circuit held that
the "Martinez standard for 'cause applies to all Sixth Amendment ineffective-
assistance claims, both trial and appellate, that have been procedurally defaulted
by ineffective counsel in the initial-review state-court collateral proceeding."  Ha

Van Nguyen, 736 F.3d at 1295; see Jordan, 2016 U.S. Dist. LEXIS 136733, at *17-18 ("The Ninth Circuit stands alone in holding that the 'Martinez standard for "cause" applies to all Sixth Amendment ineffective-assistance claims, both trial and appellate, that have been procedurally defaulted by ineffective counsel in the initial-review state-court collateral proceeding.'").

Recently, in Davila v. Davis, 137 S. Ct. 2058 (2017), the Supreme Court of the United States addressed whether Martinez should be extended to "allow a federal court to hear a substantial, but procedurally defaulted, claim of ineffective assistance of appellate counsel when a prisoner's state postconviction counsel provides ineffective assistance by failing to raise that claim." Id. at 2065. The Court declined to extend Martinez to such cases. Id. According to the Court, "[o]n its face, Martinez provides no support for extending its narrow exception to new categories of procedurally defaulted claim." Id.

Thus, "Martinez is limited to situations in which the underlying procedurally defaulted claim is one of ineffective assistance of trial counsel." Jordan, 2016 U.S. Dist. LEXIS 136733, at *18; see Allam, 2017 U.S. Dist. LEXIS 51286, at *17-19. "Therefore, outside of the limited circumstances identified in Martinez, Coleman remains the law and the ineffective assistance of post-conviction counsel cannot supply cause to excuse the procedural default of an

underlying claim of ineffective assistance of appellate counsel." Jordan, 2016 U.S. Dist. LEXIS 136733, at *19.  As a result, Petitioner's argument that his direct appeal counsel failed to properly raise his Jackson claim before the Pennsylvania Superior Court does not establish that he is entitled to the Martinez exception to procedural default.

Consequently, Petitioner cannot avail himself of the narrow exception established in Martinez.  Therefore, Petitioner's sufficiency of the evidence claims concerning his convictions at issue in this section are procedurally barred, and, thus, will be denied unless he can establish that a miscarriage of justice exception to procedural default should allow these claims to proceed.

b.    Miscarriage of Justice Exception to Procedural Default

Petitioner claims that his sufficiency of the evidence claim should be considered on the merits because he is actually innocent of the charge concerning possession of a firearm with manufacturer's number altered.  Specifically, Petitioner states that:

> in light of Newly-discovered evidence of Affiant's new charging document against Johnothon Moss, Moss's guilty plea, and sentencing order via a plea of guilt to Possession of the same exact firearm which resulted in the conviction of [Petitioner][, which] caused a Miscarriage of justice.

(Doc. 7, p. 37).  Also in support of this claim, Petitioner notes that "Moss testified

that 'it was my gun, and not [Petitioner's].'" (Doc. 7, p. 37). "As a result," Petitioner contends, he "was 'wrongfully convicted' and 'actually innocent,' as here, subsequently, however, based on newly discovered evidence of Detective Munch charging Mr. Moss with possession of a firearm with an Altered Manufacturer's number,' and, ultimately, Moss had pleaded guilty to 'Possession of a firearm Without a License,' M1, on January 25, 2012." (Id.). This new evidence, Petitioner claims, "is 'new reliable . . . critical evidence that was not presented at trial, and shows that no reasonable juror would have voted to find [Petitioner] guilty beyond a reasonable doubt, to satisfy the standard set forth in Mills v. Carroll[], 515 F. Supp. 2d 463 (3d Cir. 2007)." (Id. at p. 38).

"'[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or[] . . . expiration of the statute of limitations.'" Coleman v. Greene, 845 F.3d 73, 77 (3d Cir. 2016) (alteration in original) (quoting McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013)); Wright v. Superintendent Somerset SCI, 601 F. App'x 115, 119 (3d Cir. 2015) (citing McQuiggin, 133 S. Ct. 1924; Schlup v. Delo, 513 U.S. 298, 327-29 (1995)). The actual innocence exception "is rare." Id. Specifically, the exception only applies if the petitioner establishes that, "'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond

48

a reasonable doubt.'" Coleman, 845 F.3d at 77 (quoting McQuiggin, 133 S. Ct. at 1928). Further, the United States Supreme Court has stated that "claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." Herrera v. Collins, 506 U.S. 390, 400 (3d Cir. 1983).

Here, the Court determines that a reasonable juror could vote to find the petitioner guilty beyond a reasonable doubt, even if they were presented with Moss's conviction, because Moss testified during trial that the firearm in question was, in fact, his handgun. (Doc. 31-17, pp. 119, 120-24). Thus, for all intents and purposes, the "new" evidence Petitioner points to in support of this claim is not "new." See Schlup, 513 U.S. at 324 ("new reliable evidence . . . not presented at trial."). Rather, the evidence relied upon by Petitioner is merely the result of the testimony that Moss provided at Petitioner's trial. See (Doc. 31-17, pp. 119, 120-24). Therefore, Petitioner's claim that this "new" evidence establishes the he is entitled to the miscarriage of justice exception to procedural default is without merit. As a result, Petitioner's claim of actual innocence based on the evidence concerning Jonathan Moss will be denied.

c.    Merits

As noted above, the Pennsylvania Superior Court decided that Petitioner

waived his sufficiency of the evidence claim concerning his convictions of

possession of intent to deliver cocaine; criminal conspiracy; and possession of

cocaine, drug paraphernalia, and a firearm with an obliterated serial number.

Pugh, No. 1165 EDA 2011, at pp. 4-5.  However, although the sufficiency of the

evidence claim was deemed waived as to these convictions, the Superior Court

went on to discuss, in the alternative, that to the extent Petitioner was arguing that

there was insufficient evidence to support his conviction for PWID cocaine, that

claim was without merit.  Since the Superior Court addressed the merits of

Petitioner's sufficiency of the evidence claim concerning PWID, this Court will do

the same.[6]

_____

[6]  Under Rolan v. Coleman, 680 F.3d 311 (3d Cir. 2012), the Third Circuit, after
conducting its own review of the petitioner's attempts to comply with Pennsylvania Rules of
Appellate Procedure 1925(b) and 2119, determined that the petitioner had substantially complied
with both of those rules.  Id. at 318-19.  As a result, the Third Circuit found that, although the
Pennsylvania Superior Court determined that the petitioner's claims were waived for failure to
comply with Pennsylvania Rules of Appellate Procedure 1925(b) and 2119, those claims were
not procedurally defaulted and, thus, should be considered on the merits.  Id.  Here, although
Petitioner does not argue that he substantially complied with Rules 1925(b) and 2119 during his
direct appeal, the Court determines that he failed to substantially comply with both rules as for
his sufficiency of the evidence claim concerning his conviction for possession of a firearm.  For
example, as for his attempt to comply with Rule 2119 in regards to his claim that there was
insufficient evidence concerning his conviction for possession of a firearm, that section of
Petitioner's brief has only two (2) citations to the record and zero (0) citations to case law in
support of his claim.  (Doc. 31-18, p. 13). As a result, the Court will not address that claim on the
merits because the Pennsylvania Superior Court's waiver determination is appropriate for

In reaching its determination that Petitioner's sufficiency of the evidence claim for PWID lacked merit, the Superior Court stated that "[a]lthough the cocaine was not found on [Petitioner's] person, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, it clearly supported the jury's finding that [Petitioner] constructively possessed the cocaine with the intent to deliver." Pugh, No. 1165 EDA 2011, at p. 7. The Superior Court continued by stating that "[t]he evidence established that, immediately after the police announced the search, Detective Jacobsen observed [Petitioner] push an air conditioner out of a bedroom window. Shortly thereafter, the police found cocaine scattered on the ground outside the window, and chunks of cocaine on the windowsill." Id. Moreover, the Superior Court noted that "[u]pon entering the home, the police discovered cocaine in the bedroom [Petitioner] shared with Gonzalez." Id. "Based upon this evidence," the Superior Court concluded, "a reasonable jury could conclude that [Petitioner] had the ability and intent to exercise conscious control and dominion over the cocaine." Id. (citing Commonwealth v. Hutchinson, 947 A.2d 800, 806 (Pa. Super. Ct. 2008)).

The Superior Court went on to state that "[a]lso inside the bedroom, the

---

precluding federal habeas review. See Smith v. Cameron, 2017 U.S. Dist. LEXIS 74432, at *15-18 (M.D. Pa. May 16, 2017) (Jones, J.).

police discovered [Petitioner] and Gonzalez, cocaine, three digital scales, large sums of cash, intact plastic bags, plastic bags with the corners cut off, and a Smith & Wesson .40 caliber handgun." Pugh, No. 1165 EDA 2011, at p. 7. "No paraphernalia for the consumption of crack cocaine was found in the residence." Id. Additionally, the Superior Court noted that "Detective Bray, the Commonwealth's expert on drug trafficking, testified that the scales found in the bedroom could be used for weighing drugs." Id. at p. 8. "He testified further that the baggies with cut corners were consistent with the creation of packaging for crack cocaine sales." Id. "Viewing the foregoing evidence in the light most favorable to the Commonwealth," the Superior Court concluded, "it was sufficient to enable the jury to find every element of the crime of [PWID] cocaine beyond a reasonable doubt." Id. (citing Commonwealth v. Palo, 24 A.3d 1050, 1054-55 (Pa. Super. Ct. 2011)). Therefore, the Superior Court determined that this claim lacked merit. Id.

Here, Petitioner takes issue with the Superior Court's determination concerning his sufficiency of the evidence claim regarding his conviction of PWID cocaine "because a rational jury could not have inferred that [Petitioner] 'exercised dominion or control' of the contraband seized because 'there is no evidence to suggest that actually 'shared the residence with Ms. Gonzalez.'"

(Doc. 7, p. 17).  The merits of this claim will be addressed below.

Initially, however, the Court must determine whether the Pennsylvania Superior Court's decision concerning Petitioner's sufficiency of the evidence claim regarding his PWID conviction is entitled to the deferential standard found in 28 U.S.C. § 2254(d).  As discussed above, the Superior Court determined that his sufficiency of the evidence claim was waived, see Pugh, No. 1165 EDA 2011, at pp. 4-5, but it also found that this claim "would not merit relief."  Id. at p. 5.

The United States Court of Appeals for the Third Circuit has held that if a state court considers the merits in the alternative then section 2254(d) deference applies.  Rolan v. Coleman, 680 F.3d 311, 319-21 (3d Cir. 2012); Branthafer, 2015 U.S. Dist. LEXIS 126142, at *15 ("If the state court considers the merits in the alternative or in a summary fashion, the § 2254(d) deferential standard of review applies.") (citing Rolan, 680 F.3d at 319-21; Chadwick v. Janecka, 312 F.3d 597, 605-07 (3d Cir. 2002); Hunterson v. Sabato, 308 F.3d 236, 246 (3d Cir. 2002)). Here, the deferential standard in section 2254(d) applies to Petitioner's claims that his convictions were based upon insufficient evidence because, while the Superior Court initially determined that such claims were waived, it also summarily found that such claims "would not merit relief."  Pugh, No. 1165 EDA 2011, at p. 4; (Doc. 31-19, p. 5).

The Court then turns to an analysis of Petitioner's sufficiency of the evidence claim concerning his PWID cocaine conviction under 28 U.S.C. § 2254(d)(1), which states that a petition for habeas corpus "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."

"A criminal defendant may be convicted only 'upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" Gerber v. Pa. Attorney Gen., 2010 U.S. Dist. LEXIS 52212, at *12-13 (M.D. Pa. 2010) (Muir, J.) (quoting In re Winship, 397 U.S. 358, 364 (1970)). "A claim for insufficiency of the evidence in a state conviction is a cognizable claim in a federal habeas proceeding." Stanley v. Sobina, 477 F. App'x 952, 954 (3d Cir. 2012) (citing Jackson v. Virginia, 443 U.S. 307, 320 (1979)). "The clearly-established federal law governing [a claim that a] conviction was based on insufficient evidence is governed by Jackson[]." Bentley v. Harlow, 2016 U.S. Dist. LEXIS 32896, at *16 (E.D. Pa. Mar. 15, 2016). "The Supreme Court held that, when reviewing a petitioner's challenge to the sufficiency of the evidence, federal courts must ask 'whether, after viewing the evidence in the light most

favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Bentley, 2016 U.S. Dist. LEXIS 32896, at *16 (emphasis in original) (quoting Jackson, 443 U.S. at 319). The United States Supreme Court has stated that this "inquiry does not require a court to 'ask' itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Jackson, 443 U.S. at 318-19. "In fact, we must defer to the jury's findings regarding the credibility of witnesses, the resolution of conflicts of evidence, and the drawing of reasonable inferences." Bentley, 2016 U.S. Dist. LEXIS 32896, at *17 (citing Jackson, 443 U.S. at 319). Thus, "[t]he question before us is whether the 'record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'" Id. (quoting Jackson, 443 U.S. at 319). "The court is not to make its own subjective determination of guilt or innocence." Kling v. Meyers, 2005 U.S. Dist. LEXIS 28972, at *10 (M.D. Pa. 2005) (Kosik, J.) (Jackson, 443 U.S. at 319 n.13). "Federal review of a sufficiency of the evidence claim under Jackson must be based upon state law, that it, the substantive elements of the crime as defined by applicable state law." Gerber, 2010 U.S. Dist. LEXIS 52212, at *13-14 (citing Jackson, 443 U.S. at 324 n.16). Additionally, "[a]lthough direct evidence may be more probative of a fact, circumstantial evidence alone may suffice for a finding of guilt beyond a

reasonable doubt." Gerber, 2010 U.S. Dist. LEXIS 52212, at *13 (citing Jackson,

443 U.S. at 324-25; citing Fed. Power Comm'n v. Fla. Power & Light Co., 453

U.S. 453, 469 n.21 (1972)).

The first question is whether the Pennsylvania Superior Court's adjudication

of Petitioner's sufficiency of the evidence claims was contrary to Jackson. See 28

U.S.C. § 2254(d)(1). The Superior Court identified the following as the standard

governing Petitioner's sufficiency of the evidence claim:

> "The standard we apply in reviewing the sufficiency of the
> evidence is whether viewing all the evidence admitted at trial
> in the light most favorable to the verdict winner, there is
> sufficient evidence to enable the fact-finder to find every
> element of the crime beyond a reasonable doubt. In applying
> [the above] test, we may not weigh the evidence and substitute
> our judgment for the fact-finder. In addition, we note that the
> facts and circumstances established by the Commonwealth
> need not preclude every possibility of innocence. Any doubts
> regarding a defendant's guilt may be resolved by the fact-finder
> unless the evidence is so weak and inconclusive that as a matter
> of law no probability of fact may be drawn from the combined
> circumstances. The Commonwealth may sustain its burden of
> proving every element of the crime beyond a reasonable doubt
> by means of wholly circumstantial evidence. Moreover, in
> applying the above test, the entire record must be evaluated and
> all evidence actually received must be considered. Finally, the
> trier of fact[,] while passing upon the credibility of witnesses
> and the weight of the evidence produced, is free to believe all,
> part or none of the evidence."

Pugh, No. 1165 EDA 2011, at p. 6 (alterations in original) (quoting

Commonwealth v. Palo, 24 A.3d 1050, 1054-55 (Pa. Super. Ct. 2011)).

Petitioner concedes that "the Superior Court described the proper standard for review as the same as Jackson." (Doc. 7, p. 14). The Court agrees. Specifically, "Pennsylvania's standard [concerning an insufficient evidence claim] is consistent with Jackson." Rainey, 2016 U.S. Dist. LEXIS 78931, at *9.

Consequently, the question then becomes whether the Pennsylvania Superior Court's adjudication of Petitioner's sufficiency of the evidence claim was an unreasonable application of Jackson. See 28 U.S.C. § 2254(d)(1). "A state court decision is 'an unreasonable application of' clearly established federal law if it 'correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case.'" Eley v. Erickson, 712 F.3d 837, 846 (3d Cir. 2013) (quoting Williams v. Taylor, 529 U.S. 362, 407-08 (2000)). "We may not grant habeas relief merely because we believe that 'the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" Id. (quoting Renico v. Lett, 130 S. Ct. 1855, 1862 (2010)). "Rather, that application must be objectively unreasonable." Renico, 130 S. Ct. at 1862. "Thus, 'even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" Eley, 712 F.3d at 846 (quoting Harrington v. Richter, 131 S. Ct. 770, 786 (2011)).

Here, Petitioner was not found with the contraband in question on his person. Rather, to obtain a conviction for PWID the Commonwealth had to establish Petitioner's constructive possession of the contraband. "When contraband is not found on the defendant's person, constructive possession can be established by showing the defendant had 'power to control the contraband and the intent to exercise that control.'" Young v. Piazza, 2009 U.S. Dist. LEXIS 13772, at *18 (E.D. Pa. 2009) (quoting Commonwealth v. Haskins, 677 A.2d 328, 330 (Pa. Super. Ct. 1996)). "The fact that another person may have had control and access does not eliminate the defendant's constructive possession." Haskins, 677 A.2d at 330. "'Constructive possession may be proved by circumstantial evidence,' and 'the requisite knowledge and intent may be inferred from examination of the totality of the circumstances.'" Young, 2009 U.S. Dist. LEXIS 13772, at *18 (quoting Haskins, 677 A.2d at 330).

In the context of discussing "constructive possession," the United States Court of Appeals for the Third Circuit has stated that in Pennsylvania "[o]wnership of a residence is 'an important factor in establishing dominion or control over the contraband [found in the residence].'" Ginter v. Skahill, 298 F. App'x 161, 164 (3d Cir. 2008) (quoting Jackson v. Byrd, 105 F.3d 145, 149 (3d Cir. 1997)). However, "[t]he mere fact that [the petitioner] did not own the house,

nor was it established that he had keys to it, does not defeat a finding of constructive possession, especially in light of the evidence discussed above." Smith v. Lamas, 2014 U.S. Dist. 59345, at *36 (E.D. Pa. Mar. 25, 2014) (citing Commonwealth v. Gilchrist, 386 A.2d 603 (1978)), adopted by, 2014 U.S. Dist. LEXIS 58369 (E.D. Pa. Apr. 28, 2014).

"Where the contraband a person is charged with possessing is not found on the person of the defendant, the Commonwealth is required to prove constructive possession." Commonwealth v. Walker, 874 A.2d 667, 677 (Pa. Super. Ct. 2005) (citing Commonwealth v. Kirkland, 831 A.2d 607, 611 (Pa. Super. Ct. 2003), app. denied, 847 A.2d 1280 (2004)). The Pennsylvania Superior Court defines constructive possession in the following manner:

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely then not. We have defined constructive possession as "conscious dominion." We subsequently defined "conscious dominion" as "the power to control the contraband and the intent to exercise that control." To aid application, we have held that constructive possession may be established by the totality of the circumstances.

Id. at 677-78 (quoting Commonwealth v. Parker, 847 A.2d 745, 750 (Pa. Super. Ct. 2004)). Further, the Superior Court has "held that circumstantial evidence is

reviewed by the same standard as direct evidence–that is that a decision by the

trial court will be affirmed 'so long as the combination of the evidence links the

accused to the crime beyond a reasonable doubt.'" Walker, 874 A.2d at 678

(quoting Commonwealth v. Johnson, 818 A.2d 514, 516 (Pa. Super. Ct. 2003)).

Based on the evidence identified in the Superior Court's decision, it did not

make an unreasonable application of Jackson. Specifically, the Superior Court

determined that there was sufficient evidence for a rational trier of fact to conclude

beyond a reasonable doubt that Petitioner constructively possessed the cocaine at

issue and did so with the intent to deliver the substance to another person. As

stated by the Superior Court, "[a]lthough the cocaine was not found on

[Petitioner's] person, viewing the evidence in the light most favorable to the

Commonwealth as verdict winner, it clearly supported the jury's finding that

[Petitioner] constructively possessed the cocaine with the intent to deliver." Pugh,

No. 1165 EDA 2011, at p. 7. The Superior Court noted that "[t]he evidence

established that, immediately after the police announced the search, Detective

Jacobsen observed [Petitioner] push an air conditioner out of a bedroom window."

Id. "Shortly thereafter, the police found cocaine scattered on the ground outside

the window, and chunks of cocaine on the windowsill." Id. The police then found

"cocaine in the bedroom [Petitioner] shared with Gonzalez." Id. "Based on this

evidence," the Superior Court found, "a reasonable jury could conclude that [Petitioner] had the ability and intent to exercise conscious control and dominion over the cocaine." Pugh, No. 1165 EDA 2011, at p. 7 (citing Commonwealth v. Hutchinson, 947 A.2d 800, 806 (Pa. Super. Ct. 2008)). Additionally, the Superior Court also noted that "inside the bedroom, the police discovered [Petitioner] and Gonzalez, cocaine, three digital scales, large sums of case, intact plastic bags, plastic bags with the corners cut off, and a Smith and Wesson .40 caliber handgun." Id. Further, "[n]o paraphernalia for the consumption of crack cocaine was found in the residence." Id.

The Superior Court also pointed to the testimony of Detective Bray in support of its determination that there was sufficient evidence to support Petitioner's conviction for PWID cocaine. Specifically, the Superior Court noted that Detective Bray "testified that the scales found in the bedroom could be used for weighing drugs" and that "the baggies with cut corners were consistent with the creation of packaging for crack cocaine sales." Id. at p. 8.

"Viewing the foregoing evidence in the light most favorable to the Commonwealth, [the Superior Court] conclude[d] that it was sufficient to enable the jury to find every element of the crime of [PWID] cocaine beyond a reasonable doubt." Id. This was not an unreasonable application of Jackson. See Walker,

874 A.2d at 677-78 (citing Commonwealth v. Miley, 460 A.2d 778, 784 (Pa. Super. Ct. 1983); Commonwealth v. Nelson, 582 A.2d 1115, 1119 (Pa. Super. Ct. 1990); Commonwealth v. Santiesteban, 552 A.2d 1072, 1074-75 (Pa. Super. Ct. 1988)); see also Smith, 2014 U.S. Dist. LEXIS 59345, at *35-36 ("The mere fact that Petitioner did not own the house, nor was it established that he had keys to it, does not defeat a finding of constructive possession, especially in light of the evidence discussed above.") (citing Gilchrist, 386 A.2d 603), adopted by, 2014 U.S. Dist. LEXIS 58369.  As a result, even if Petitioner's sufficiency of the evidence claim concerning his conviction for PWID cocaine was not procedurally defaulted, it would lack merit because given the large amount of evidence that supported the inference that Petitioner had constructive possession over the cocaine and contraband associated with his conviction for PWID cocaine, the Superior Court's conclusion that there was sufficient evidence to convict Petitioner of PWID was neither contrary to, nor an unreasonable application of, clearly established federal law.

> 2.    Claims Concerning Ineffective Assistance of Trial Counsel

Petitioner claims that his trial counsel was ineffective for a number of reasons.  Specifically, Petitioner claims that his trial counsel was ineffective for the following: failing to call a co-defendant to testify on Petitioner's behalf,

adequately prepare for a witness, call Petitioner to testify on his own behalf, and to object during the Commonwealth's closing argument. See (Doc. 7). To obtain relief on these claims, Petitioner must show "that counsel's performance was deficient." Strickland v. Washington, 466 U.S. 668, 687 (1984). "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. Importantly, "counsel's reasonableness is assessed 'on the facts of the particular case, viewed as of the time of counsel's conduct.'" Saranchak, 802 F.3d at 588 (citing Outten v. Kearney, 464 F.3d 401, 414 (3d Cir. 2006)). Additionally, Petitioner must show that "the deficient performance prejudiced the defense." Id. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. As noted above, in Deputy, 19 F.3d at 1494, "the United States Court of Appeals for the Third Circuit also noted that it was not bound by any state court determinations as to a counsel's performance." Rainey, 2016 U.S. Dist. LEXIS 78931, at *17 (citing Deputy, 19 F.3d at 1494). "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." Strickland, 466 U.S. at 687.

Before addressing Petitioner's ineffective assistance claims, the Court notes

that in analyzing Petitioner's ineffective assistance of counsel claims,[7] the

Pennsylvania Superior court did not cite to, nor did it apply, Strickland. Pugh, No.

3134 EDA 2013, at p. 4. Rather, the Superior Court stated that "[i]n reviewing an

allegation of ineffective assistance of counsel, we begin with the assumption that

counsel was effective." Id. at p. 3 (citing Commonwealth v. Pierce, 527 A.2d 973,

975 (Pa. 1987)). The Superior Court continued by stating that the standard used in

Pennsylvania to determine whether trial counsel was ineffective required

Petitioner to "'prove that: (1) the underlying claims is of arguable merit; (2)

counsel's performance lacked a reasonable basis; and (3) the ineffectiveness of

counsel caused the petitioner prejudice.'" Id. at p. 4 (quoting Commonwealth v.

Collins, 957 A.2d 237, 244 (Pa. 2008)). The Superior Court continued by stating

that "[t]he failure by the petitioner 'to satisfy any one of the three prongs of the

test for ineffectiveness requires rejection of the claim.'" Id. (quoting Collins, 957

A.2d at 244). "Collins . . . held that ineffectiveness claims should be evaluated

pursuant to the standard announced in Commonwealth v. Pierce, 515 Pa. 153, 527

A.2d 973 (1987), which adapts the two-part test established by the United States

Supreme Court in Strickland[,] 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674

---

[7] Notably, as discussed in more detail below, Petitioner has failed to establish that he argued before a state court that his trial counsel was ineffective for failing to object during the Commonwealth's closing argument.

(1984), but then separates the test into three-parts." <u>Bell v. Jones</u>, 2011 U.S. Dist.

LEXIS 29735, at \*9 (E.D. Pa. Mar. 22, 2011). According to the United States

Court of Appeals for the Third Circuit, "Pennsylvania's test for assessing

ineffective assistance of counsel claims is not contrary to <u>Strickland</u>." <u>Jacobs v.

Horn</u>, 395 F.3d 92, 106 n.9 (3d Cir. 2005) (citing <u>Werts v. Vaughn</u>, 228 F.3d 178,

204 (3d Cir. 2000)). Thus, the test employed by the Superior Court in addressing

Petitioner's ineffective assistance of counsel claims was not "contrary to"

<u>Strickland</u>. Therefore, the Court will turn to whether the Superior Court made an

"unreasonable application" of federal law or reached an "unreasonable

determination of the facts" as to any of the ineffective assistance of counsel claims

raised by Petitioner during his appeal.

a.  <u>Whether Petitioner's Trial Counsel was Ineffective for Failing
to Call Co-Defendant to Testify</u>

As noted, Petitioner claims that his right to effective assistance of counsel

under the Sixth Amendment of the United States Constitution was violated when

his trial counsel failed to call Ms. Gonzalez, a co-defendant, as a witness. (Doc. 7,

p. 36). Petitioner states that his "[t]rial counsel, Mr. Vito, however, testified that

Ms. Gonzalez told him that '[Petitioner] was not a resident at the premise searched

by the police.'" (<u>Id.</u>). Petitioner claims that his trial counsel also "conceded that

the premise searched by the police was indeed 'leased to Aracelis Gonzalez."

(Doc. 7, p. 36). According to Petitioner, Ms. Gonzalez "would have testified that

all of the items seized by police belonged to her and [Petitioner]." (Id.).

Additionally, Petitioner claims that Ms. Gonzalez's testimony "would have

corroborated with Moss's testimony that the 'Smith and Wesson 40 caliber

handgun with an Altered Manufacturer's number' belonged to Moss, and, thus,

[Petitioner] had 'no involvement in possession with a firearm with an Altered

Manufacturer's Number.'" (Id. at pp. 36-37). Petitioner claims that "[t]his is

central to [his] claim of innocence on the offense(s): PWID , Conspiracy to PWID,

and Possession of a firearm with an Altered Manufacturer's Number." (Id. at p.

37).

### i.   Exhaustion

Petitioner raised the claim of ineffective assistance of trial counsel for

failing to call Gonzalez as a witness during his initial PCRA proceedings. See

(Doc. 31-21, pp. 20, 22). The PCRA court denied that particular claim. (Id. at p.

22). Petitioner appealed the denial of his PCRA petition to the Pennsylvania

Superior Court. As part of that appeal, Petitioner challenged the PCRA court's

determination that his trial counsel was not ineffective for failing to call Gonzalez

as a witness during trial. See (Id. at pp. 35-36). The Superior Court rejected

Petitioner's claim that his trial counsel was ineffective "for failing to call Gonzalez, a co-defendant in this case, as a witness," and affirmed the PCRA court's denial of that claim. Pugh, No. 3134 EDA 2013, at p. 5. As a result, Petitioner properly exhausted this ineffective assistance of counsel claim.

    ii.    <u>Merits</u>

In addressing Petitioner's claim that his trial counsel was ineffective for failing to call a co-defendant to testify, the Superior Court "agree[d] with the PCRA court's conclusion that trial counsel was not ineffective for failing to call Gonzalez as a witness at trial." <u>Id.</u> In reaching this determination, the Superior Court found that Petitioner had "not proven that Gonzalez's testimony, had trial counsel called her as a witness, would have been beneficial to him under the circumstances of this case." <u>Id.</u> at p. 6. The Superior Court did note that "[a]t the hearing on [Petitioner's] PCRA petition, trial counsel testified that Gonzalez had told him that [Petitioner] did not reside at her apartment where the firearm and drugs were found, but rather that [Petitioner] 'had some belongings there . . . [and] that he would make, for lack of [a] better term, guest appearances there periodically[.]'" <u>Id.</u> (alterations in original). Nevertheless, the Superior Court concluded that Petitioner did not provide an "explanation as to how this testimony would have been beneficial to him at trial." <u>Id.</u> Therefore, the Superior Court

determined, this claim was meritless.  <u>Pugh</u>, No. 3134 EDA 2013, at p. 6.

"An evaluation of the failure on the part of defense counsel to call witnesses falls squarely within the first prong of <u>Strickland</u>, which pertains to whether the attorney made his tactical decisions 'in the exercise of reasonably professional judgment.'"  <u>Bowen v. Blaine</u>, 243 F. Supp. 2d 296, 311 (E.D. Pa. 2003) (quoting <u>Strickland</u>, 466 U.S. at 690; citing <u>Duncan v. Morton</u>, 256 F.3d 189, 201 (3d Cir. 2001)).  "Where, as here, the petitioner claims that his counsel had been ineffective for failing to call potentially important exculpatory witnesses, the assessment of trial counsel's judgment requires another layer of deference: we are 'required not simply to give [the] attorney[] the benefit of the doubt, but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as [he] did.'"  <u>Branch v. Sweeney</u>, 758 F.3d 226, 235 (3d Cir. 2014) (alterations in original) (quoting <u>Cullen v. Pinholster</u>, 131 S. Ct. 1388, 1407 (2011)).  "Thus, the nexus of the AEDPA and <u>Strickland</u> compels us to be 'doubly deferential,' and 'give[] both the state court and the defense attorney the benefit of the doubt.'"  <u>Id.</u> (quoting <u>Burt v. Titlow</u>, 134 S. Ct. 10, 13 (2013)).

As noted by the Respondent and the PCRA court, Gonzalez entered into a plea of guilty to charges stemming from the circumstances that resulted Petitioner being charged and convicted.  Specifically, the PCRA court stated that "Ms.

Gonzalez was a co-defendant" and that "[b]y the time of [Petitioner's] trial, she had taken the Commonwealth's plea offer." Pugh, No. CP-45-CR-2090-2009, p. 4 (Monroe Cnty. C.P. filed Oct. 16, 2013). As part of her plea deal, the PCRA found, she was required to "cooperate fully in the Commonwealth's investigation of the matter." Id.; (Doc. 31, pp. 11-12). According to Respondent, "Ms. Gonzalez was also arrested and charged at the time of the execution of the search warrant in the instant matter." (Doc. 31, p. 11). "Ms. Gonzalez was also similarly charged, including [PWID], and Conspiracy to commit the same." (Id.). Respondent states that "Ms. Gonzalez availed herself of the Commonwealth's plea offer and plead guilty to one count of [PWID] a Controlled Substance, cocaine, an ungraded felony." (Id. at pp. 11-12). Respondent says that Ms. Gonzalez's "plea agreement also required that [she] cooperate fully with the Commonwealth's investigation." (Id. at p. 12). Additionally, outside of his bare assertions, the PCRA court found that Petitioner did not identify how Ms. Gonzalez's lack of testimony prejudiced him. Pugh, No. CP-45-CR-2090-2009, p. 4 (Monroe Cnty. C.P. filed Oct. 16, 2013).

Thus, based on the foregoing, there is nothing to support Petitioner's claim that Ms. Gonzalez was available to testify or would have provided evidence beneficial to his defense. As a result, Petitioner fails to show how the Superior

Court's decision was unreasonable application of <u>Strickland</u> or an unreasonable determination in light of the circumstances of the case. Specifically, it was not unreasonable for the Superior Court to conclude that Petitioner's ineffective claim concerning Gonzalez failed because he did not provide an "explanation as to how this testimony would have been beneficial to him at trial." <u>Pugh</u>, No. 3134 EDA 2013, at p. 6. Therefore, this claim will be denied because the Superior Court did not apply <u>Strickland</u> in an unreasonable manner nor did it reach a determination that is unreasonable in light of the circumstances of this matter.

      b.      <u>Whether Petitioner's Trial Counsel was Ineffective for Not Sufficiently Preparing a Third-Party Witnesses' Testimony</u>

      i.      <u>Exhaustion</u>

On appeal from the denial of Petitioner's first PCRA petition, Petitioner presented his claim that his trial counsel was ineffective for failing to sufficiently prepare Jonathan Moss as a witness. <u>See</u> <u>Pugh</u>, No. 3134 EDA 2013, at p. 4. The Pennsylvania Superior Court, in addressing Petitioner's claim that his trial counsel was ineffective for failing to interview Jonathan Moss prior to his testimony at trial, found that this claim lacked merit. <u>Id.</u> at pp. 4-5. As a result, Petitioner's claim concerning his trial counsel's preparation of Jonathan Moss as a witness was properly exhausted.

ii.    <u>Merits</u>

According to the Superior Court, "Moss testified at trial that the firearm police recovered from the apartment with the serial number removed belonged to him." <u>Pugh</u>, No. 3134 EDA 2013, at  p. 4.  Petitioner argued before the Superior Court that "had trial counsel interviewed Moss before his trial, he could have ascertained whether Moss could have provided any relevant information about whether the drugs and drug paraphernalia found in the apartment near the firearm belonged to Moss." <u>Id.</u>  The Superior court "agree[d] with the PCRA court's conclusion that trial counsel was not ineffective for failing to interview Moss prior to his testimony at trial." <u>Id.</u>  The Superior Court reasoned that "Moss testified at [Petitioner's] trial that he knew nothing about the drugs and drug paraphernalia found in the apartment at issue in this case." <u>Id.</u>  The Superior Court also noted that "Moss testified that he was unaware that there was drug dealing taking place in that apartment." <u>Id.</u> at pp. 4-5.  Also, the Superior Court stated that "Moss did not testify at the PCRA court hearing and [Petitioner] offered no other evidence to suggest that Moss in fact possessed any knowledge or information that could have aided his case (if trial counsel had made such an inquisition)." <u>Id.</u> at p. 5.

Based on the foregoing, the Superior Court determined that "there [was] no evidence that Moss was the owner of the drugs and drug paraphernalia found near

the firearm in the apartment or that Moss would have been willing to testify as such." <u>Pugh</u>, No. 3134 EDA 2013, at p. 5. "Thus," the Superior Court concluded, Petitioner's "claim that the trial court erred by finding that trial counsel was not ineffective for failing to interview Moss prior to his testimony at [Petitioner's] trial is without arguable merit." <u>Id.</u> "Accordingly, because the failure to satisfy any one of the prongs of the ineffective assistance counsel test results in the rejection of that claim . . . ." <u>Id.</u>

The Superior Court's application of the principles established in <u>Strickland</u> to Petitioner's claim that his trial counsel was ineffective for failing to properly prepare Moss as a witness was not unreasonable. As stated, the Superior Court found that "there [was] no evidence that Moss was the owner of the drugs and drug paraphernalia found near the firearm in the apartment or that Moss would have been willing to testify as such." <u>Id.</u> Petitioner has not established how this determination was either an unreasonable application of <u>Strickland</u> or an unreasonable determination of the circumstances of the case. As a result, Petitioner's claim that the Superior Court's decision concerning his claim that his trial counsel was ineffective for failing to sufficiently prepare Jonathan Moss as a witness was unreasonable will be denied.

c.    Whether Petitioner's Trial Counsel was Ineffective for Not Calling Petitioner to Testify

Petitioner claims that his Sixth Amendment right to effective assistance of counsel was violated when his "trial counsel prevented or interfered with [Petitioner's] decision to exercise his Constitutional right to testify at trial." (Doc. 7, p. 31). Petitioner states that "[i]t is important to note that the trial court failed to act <u>sua sponte</u> in ordering a waiver colloquy on [Petitioner's] choice on whether or not he waive[d] his Constitutional right to testify at the time of trial." (<u>Id.</u> at p. 32). Also, Petitioner claims that "[t]rial counsel misinformed [Petitioner] that the prosecution would impeach him at trial on a prior conviction involving a prior gun conviction back in 2002, if, however, [he] choose to take the witness stand." (<u>Id.</u> at p. 31). Petitioner states that he "testified that when [trial counsel] from the first time he came to visit [Petitioner] in Monroe County [prison] [he] told [trial counsel] that '[he] wanted to testify.'" (<u>Id.</u> at p. 33) (first and third alterations in original). According to Petitioner, "[t]hat was the first and last time [he] spoke or saw [his trial counsel]." (<u>Id.</u>). Further, Petitioner states that trial counsel asked him during the trial whether he wanted to testify, to which Petitioner responded in the affirmative. (<u>Id.</u>). Petitioner contends that trial counsel, in response to Petitioner voicing his desire to testify, stated that "'we [are] not ready to testify . . .

, but he said 'we not ready for me to go testify when we [were] sitting in court at the time." (Doc. 7, p. 33) (alterations in original).

Petitioner also states that his trial counsel admitted that Petitioner had voiced his desire to testify, but also that trial counsel "emphasized, 'we went back and forth with it . . . .'" (Id.). Petitioner claims that "[t]aken as a whole, the state court decision was 'an unreasonable application under Strickland.'" (Id.). "Thus, because trial counsel prevented [Petitioner] from exercising his constitutional right to testify, and, further, he interfered with that right, counsel's performance did fall below Strickland's objective standard of reasonableness." (Id. at p. 32) (citing Pennycooke, 65 F.3d at 10; Aikens, 358 F. Supp. at 436).

According to Petitioner, "[t]here is a 'reasonable probability' that the result of the proceedings would have been different, because [Petitioner] would have testified" to the following: "he was 'not a resident at [the] apartment," he did not "share[] the apartment with Ms. Gonzalez," "only one single set of clothing was merely his," "the object Detective Jocobsen observed [Petitioner] throw out of the window was 'a small amount of crack with a straight glass smoking pipe' because of being merely a 'drug user,'" and that he "was merely present, and, there, to have sex and 'smoke crack cocaine.'" (Id. at p. 33). Petitioner contends that "[t]his testimony, if permitted, would [have] exonerated [Petitioner] from the crimes

charged except for the charge of possession of a small amount of cocaine . . . ." (Doc. 7, p. 33). Moreover, Petitioner argues that "[t]hese statements show that, with [Petitioner's] testimony, there is a 'reasonable probability' that if jury hears [Petitioner's] proposed testimony there would not have been a conviction on charge for" PWID cocaine, conspiracy to commit PWID, Endangering the Welfare of a Child, and Possession of a Firearm with an Altered Serial Number. (Id. at p. 35). Petitioner also claims that the Pennsylvania Superior Court's determination that his trial counsel was not ineffective for failing to call him as a witness was objectively unreasonable application of Strickland. (Id.).

> i.     Exhaustion

Petitioner raised this claim during his initial PCRA proceedings. See (Doc. 31-21, pp. 23-24). The PCRA court considered this claim, but ultimately found that it was meritless. See (Id.). Petitioner appealed the PCRA court's denial of his PCRA petition to the Pennsylvania Superior Court. See (Id. at pp. 37-39). During that appeal, the Superior Court addressed Petitioner's claim that his trial counsel was ineffective "for not allowing [Petitioner] to testify on his own behalf" and found it to be without merit. Pugh, No. 3134 EDA 2013, at p. 7. Therefore, Petitioner's claim that his trial counsel was ineffective for failing to call Petitioner as a witness was fully exhausted.

ii.    <u>Merits</u>

The Superior Court concluded that "the PCRA court did not err by finding that trial counsel was not ineffective for not allowing [Petitioner] to testify on his own behalf." <u>Pugh</u>, No. 3134 EDA 2013, at p. 7.  The Superior Court noted that "[a]t the PCRA hearing, trial counsel testified that he and [Petitioner] had multiple conversations about whether [Petitioner] should testify." <u>Id.</u>  "Trial counsel explained that he advised [Petitioner] not to testify because he did not want the prosecutor to cross-examine him regarding his prior gun charges or the circumstances surrounding the instant case." <u>Id.</u>  The Superior Court stated that "[t]rial counsel testified that it was his conscious trial strategy not to call [Petitioner] as a witness because he did not believe testifying was going to be in [Petitioner's] best interest." <u>Id.</u>  According to the Superior Court, "[t]rial counsel also stated that [Petitioner] did not insist on testifying and instead deferred to his judgment." <u>Id.</u>  The Superior Court went on to state that "[c]onversely, [Petitioner] testified that he told trial counsel that he wanted to testify because he could explain the circumstances surrounding his prior gun charge and why he was innocent in this case." <u>Id.</u>

The Superior Court went on to find "no error with the PCRA court's determination" that the trial counsel's strategy was "reasonable . . . ." <u>Id.</u> at pp. 8-

9.  As a result, the Superior Court "concluded that the trial counsel was not ineffective." Pugh, No. 3134 EDA 2013, at pp. 8-9.  The Superior Court noted that "[t]rial counsel's testimony, which the trial court found credible, indicates that he discussed with [Petitioner] on multiple occasions whether [Petitioner] should testify." Id. at p. 9.  Moreover, the Superior Court went on to state that "[t]rial counsel's reasons for advising [Petitioner] not [to] testify, i.e., that the prosecutor would cross-examine [Petitioner] about his prior gun charge and the circumstances surrounding this case, were indicative of a reasonable trial strategy." Id.  Additionally, the Superior Court found, Petitioner "provided no evidence that trial counsel interfered with [Petitioner's] freedom to testify or gave [Petitioner] specific advice so unreasonable as to vitiate a knowing and intelligent decision by [Petitioner] not to testify in his own behalf." Id.  "Therefore," the Superior Court concluded, Petitioner "has failed to sustain his burden of establishing ineffective assistance of counsel in this regard." Id.

"'The Strickland [v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)] standard is applicable when a petitioner claims his attorney was ineffective by denying him his constitutional right to testify.'" Palmer v. Hendricks, 592 F.3d 386, 394 (3d Cir. 2010) (alterations in original) (quoting Matylinsky v. Budge, 577 F.3d 1083, 1097 (9th Cir. 2009)).  As part of the

Strickland standard, Petitioner must "'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Johnson v. Fisher, 2016 U.S. Dist. LEXIS 127800, at *20 n.14 (E.D. Pa. Sept. 20, 2016) (quoting Palmer, 592 F.3d at 394). "To prevail on an ineffective assistance claim premised on trial counsel's alleged refusal to allow a client to testify, the petitioner must do more than just assert that his lawyer refused to allow him to testify." Gray v. Gilmore, 2016 U.S. Dist. LEXIS 76999, at *44 (M.D. Pa. June 14, 2016) (Munley, J.). "'It is extremely common for criminal defendants not to testify' and a defendant merely claiming that he was denied the right to testify in his own defense is thus 'too facile a tactic to be allowed to succeed.'" Id. (quoting Underwood v. Clark, 939 F.2d 473, 475 (7th Cir. 1991)). "[I]n a subsequent collateral attack on the conviction the defendant must produce something more than a bare, unsubstantiated, thoroughly self-serving, and none too plausible statement that his lawyer (in violation of professional standards) forbade him to take the stand." Underwood, 939 F.2d at 476.

Here, there is nothing unreasonable in the Superior Court's decision to deny Petitioner's claim that his trial counsel was ineffective in not calling Petitioner to testify on his own behalf. See Gray, 2016 U.S. Dist. LEXIS 76999, at *45-47.

The Superior Court found that "the PCRA court did not err by finding that trial counsel was not ineffective for not allowing [Petitioner] to testify on his own behalf." Pugh, No. 3134 EDA 2013, at p. 7. In support, the Superior Court noted that "[a]t the PCRA hearing, trial counsel testified that he and [Petitioner] had multiple conversations about whether [Petitioner] should testify." Id. The Superior Court stated that "[t]rial counsel explained that he advised [Petitioner] not to testify because he did not want the prosecutor to cross-examine him regarding his prior gun charges or the circumstances surrounding the instant case." Id. Additionally, the Superior Court noted that "[t]rial counsel testified that it was his conscious trial strategy not to call [Petitioner] as a witness because he did not believe testifying was going to be in [Petitioner's] best interest." Id. at p. 8. According to the Superior Court, "[t]rial counsel also stated that [Petitioner] did not insist on testifying and instead deferred to his judgment." Id.

As stated by the Superior Court, the PCRA court found "trial counsel's testimony regarding the aforementioned advice he gave [Petitioner] to be credible." Id. The Superior Court noted that "[t]he PCRA court also found that [Petitioner] 'has not advanced any argument as to why [trial counsel]'s advice to testify was "so unreasonable as to vitiate a knowing and intelligent decision not to testify on his own behalf."'" Id. (second alteration in original). "Therefore," the

Superior Court concluded, "the PCRA court found trial counsel's strategy reasonable, and as a result, concluded that trial counsel was not ineffective." Pugh, No. 3134 EDA 2013, at p. 8.

The Superior Court found "no error with the PCRA court's determination." Id. at p. 9. The Superior Court noted that "[t]rial counsel testified that it was his conscious trial strategy not to call [Petitioner] as a witness because he did not believe testifying was going to be in [Petitioner's] best interest." Id. at p. 8. Further, "[t]rial counsel also stated that [Petitioner] did not insist on testifying and instead deferred to his judgment." Id. The Petitioner, on the other hand, "testified that he told trial counsel that he wanted to testify because he could explain the circumstances surrounding his prior gun charge and why he was innocent in this case." Id.

The Superior Court noted that "[t]rial counsel's testimony, which the trial court found credible, indicates that he discussed with [Petitioner] on multiple occasions whether [Petitioner] should testify." Id. As a result, the Superior Court found that "[t]rial counsel's reasons for advising [Petitioner] not testify, i.e., that the prosecutor would cross-examine [Petitioner] about his prior gun charge and the circumstances surrounding this case, were indicative of a reasonable trial strategy." Id. "Moreover," the Superior Court noted, Petitioner "has provided no

evidence that trial counsel interfered with [Petitioner's] freedom to testify or gave [Petitioner] specific advice so unreasonable as to vitiate a knowing and intelligent decision by [Petitioner] not to testify in his own behalf." Pugh, No. 3134 EDA 2013, at p. 9. As a result, the Superior Court affirmed the PCRA court's denial of this ineffective assistance claim because Petitioner "has failed to sustain his burden of establishing ineffective assistance of counsel in this regard." Id.

Notably, the "AEDPA endows a state tribunal's findings of fact with a 'presumption of correctness,' and this presumption extends 'to the factual determinations of state trial and appellate courts.'" Williams, 637 F.3d at 204 (quoting Duncan, 256 F.3d at 196). "To overcome the presumption, a habeas petitioner must proffer clear and convincing evidence to show that a factual determination is 'objectively unreasonable in light of the evidence presented in the state-court proceeding.'" Id. (quoting Miller-El, 537 U.S. at 340). Here, the PCRA court credited trial counsel's testimony over Petitioner's. Pugh, No. 3134 EDA 2013, at p. 8. Specifically, the PCRA court found that "it is apparent that [Petitioner] decided not to testify, after receiving advice from counsel and that this was a reasonable trial strategy at the time." Pugh, No. CP-45-CR-2090-2009, at p. 5 (Monroe Cnty. C.P. filed Oct. 16, 2013). Specifically, the PCRA court found that trial counsel "strongly advised [Petitioner] against" testifying, and that

Petitioner "took that advice." Pugh, No. CP-45-CR-2090-2009, at p. 6. The

PCRA court found trial counsel's "testimony credible, and in accordance with

counsel's statements and [Petitioner's] actions at trial." Id. As stated by the

Superior Court "[t]rial counsel . . . stated that [Petitioner] did not insist on

testifying and instead deferred to his judgment." Pugh, No. 3134 EDA 2013, at p.

8. The PCRA court also found that had Petitioner testified at trail he "would have

been subject to cross-examination on incriminating evidence offered by other

witnesses during the trial including questions concerning:"

> the fact that he was first observed by the police pushing an air
> conditioner out the second floor window of the apartment, and
> then threw rocks of crack cocaine out the window; crack cocain
> found out in the open on the nightstand with numerous "crop"
> marks carved into the nightstand, believed by the police to be
> from a razor blade used to chop up the crack cocaine; crack
> cocaine found on the floor to the left of the bed . . . and to the
> right of the bed; the white shorts on the nightstand next to
> [Petitioner's] bed where &1,020 was found in the pocket; $100
> which was found between the bed and the boxspring of the bed
> [Petitioner] was found in; the nightstand next to the bed where
> [Petitioner] was found with the Smith & Wesson .40 caliber
> loaded handgun was found (sic); some of the crack was in
> triangular "corners" cut from plastic baggies; no drug
> paraphernalia for smoking or ingesting drugs was found;
> [Petitioner's] statement to the police that the male clothing in
> the bedroom closet was his; $180 in cash found in the pocket of
> a man's jacket in the bedroom closet.

Pugh, No. CP-45-CR-2090-2009, at pp. 5-6 (Monroe Cnty. C.P. filed Oct. 16,

2013) (internal citations omitted). These determinations "are precisely the type of

factual determination[s] which, under 28 U.S.C. § 2254, is presumed to be correct

and can be overcome only by clear and convincing evidence from Petitioner."

Price v. Wynder, 2008 U.S. Dist. LEXIS 8521, 2008 WL 343120, at *15 (E.D. Pa.

Feb. 6, 2008), aff'd, 350 F. App'x 692 (3d Cir. 2009). Petitioner has failed to

meet this burden. Further, as noted by the Superior Court, trial counsel's advice

that Petitioner not testify was designed to keep the jury from learning of

Petitioner's prior gun charge. Id. Thus, Petitioner's proposed testimony would

have opened the door for the Commonwealth to question Petitioner about his prior

gun charge. Id. As a result, based on the circumstances discussed above, the

Superior Court's decision to affirm the PCRA court's denial of Petitioner's claim

that his trial counsel was ineffective for failing to call him to testify on his own

behalf was not an unreasonable application of Strickland, nor was it an

unreasonable determination of the facts of this matter. See Nelson v. Varano,

2015 U.S. Dist. LEXIS 31817, at *21-23 (E.D. Pa. Jan. 13, 2015), adopted by,

2015 U.S. Dist. LEXIS 30924 (E.D. Pa. Mar. 12, 2015). As a result, Petitioner's

claim that his trial counsel was ineffective for failing to call Petitioner to testify in

his own defense will be denied.

d.    Whether Petitioner's Trial Counsel was Ineffective for Failing
       to Object During the Prosecution's Closing Argument

Finally, Petitioner contends that his Sixth Amendment right to effective

assistance of counsel and his "right to a fair trial" were violated "when trial

counsel failed to object to the prosecutor's intentional misconduct during closing

arguments to the jury, thereby resulting in a manifest miscarriage of justice."

(Doc. 7, p. 40).  According to Petitioner, the prosecution committed misconduct

during closing arguments when it made the following statements: "'[t]here's

people in and out of that place buying rocks of cocaine like theres nothing.

Traffic.  Traffic.  Traffic.  And [Petitioner is] there. [Petitioner] lives there . . .'";

"'[i]t's obvious [Petitioner] lives there because his clothes are hanging in the

closet . . .'"; that Petitioner tried "to distance himself from Aracelis Gonzalez;"

"[y]ou've heard 'she pled guilty to [PWID].'  'Bonnie and Clyde.'  Whose clothes

were they?  What side of the bed did they sleep on?  Moss wasn't there.  'It wasn't

him.'  'It's Bonnie and Clyde.'  They were working together. 'I'm not saying it

was all him.'  'They packaged all this stuff up, 'sell it,' and they'd make money.'

'And they did.'  And it came to an end on December 03, 2009.  Convict this man

with [PWID] crack cocaine . . .;" and that Petitioner "'is a drug dealer.'"  (Id. at

pp. 40-41).  As noted, Petitioner argues that he was provided ineffective assistance

of counsel when his trial counsel failed to object to any of these statements during the prosecution's closing argument. (Doc. 7, pp. 40-41).

a. Exhaustion

Petitioner argues that "Respondent cannot raise the defense of '[p]rocedural default' on [this claim]" and that "exhaustion should be excusable in light of Martinez v. Ryan, 132 S. Ct. 1309, 1318-1320 (2012), or because [this claim] is currently being heard before the PCRA Court." (Doc. 7, p. 41). According to Petitioner, for the Court to consider this claim, it must find that Petitioner received ineffective assistance from his "post-conviction counsel, as well as ineffective assistance at trial." (Doc. 32, p. 11) (citing Martinez, 132 S. Ct. at 1318) (quoting Cox, 757 F.3d at 119, 125). Petitioner contends that his "Post-Conviction counsel failed to conduct an adequate search of the trial record and thus to present a constitutional violation, when the petitioner was denied his Sixth Amendment right to effective assistance of counsel and fourteenth amendment right to a fair trial." (Id.). Specifically, Petitioner claims that his "Post-Conviction counsel failed to expose that trial counsel failed to object to the prosecutor's intentional misconduct during closing arguments to the jury, thereby resulting in a manifest miscarriage of justice." (Id.). Petitioner concedes that this claim "was not raised in the initial collateral proceeding." (Id.). This occurred, according to Petitioner,

because his post-conviction counsel "failed to raise or investigate a claim of trial counsel's ineffectiveness due to failure to object to the prosecutor's closing remarks at trial." (Doc. 32, p. 11). Petitioner claims that "[a]ny reasonable PCRA counsel would have asserted a Sixth and Fourteenth Amendment claims of right to effective assistance of counsel and right to a fair trial." (Id.).

Additionally, Petitioner claims that he has suffered actual prejudice. (Id. at pp. 12-13). As noted above, Petitioner claims his rights were violated when the prosecutor made the following remarks during closing arguments: "(1) 'You've heard Aracelis Gonzalez pled guilty to [PWID]; (2) referring to petitioner as 'Bonnie and Clyde'; [] (3) referring to petitioner as 'a drug dealer'; and (4) Ordering the jury to 'convict this man with intent to distribute crack cocaine . . . .'" (Id. at p. 13). "Furthermore," Petitioner contends, "the prosecutor misled the jury and referred to evidence not of record, where the prosecution commented that 'There's people in and out of that place buying rocks of cocaine like there's nothing. Traffic. Traffic." (Id.). Petitioner argues that these "actions" were "objectionable." (Id.). As a result, due to "trial counsel's failure to object," Petitioner contends that the trial counsel's "performance" was "deficient under Strickland." (Id.). Moreover, Petitioner claims that "in light of the prejudice, there was reasonable probability, but for, trial counsel's failure to object to the

prosecutor's remarks during the course of closing argument." (Doc. 32, p. 14).

Petitioner asserts that his trial counsel "allowed the jury to hear comments by the

prosecutor in which adversely 'affected the fairness of the trial process,' thereby

violating the standard set for under Darden v. Wainwright, 477 U.S. at 181,

Donnelly, 416 U.S. at 643." (Id.). Petitioner continues by contending that the trial

counsel's failure to object to the aforementioned statements made by the

prosecution during closing arguments prejudiced the defendant "and thus thereby

[was] a violation under the Sixth Amendment of our United States Constitution

under Strickland v. United States, 466 U.S. at 687." (Id.).

      b.    Procedural Default

The Supreme Court of the United States has held "[a] claim of ineffective

assistance' . . . generally must 'be presented to the state courts as an independent

claim before it may be used to establish cause for a procedural default." Murray v.

Carrier, 477 U.S. 478, 490-92 (1986). The Supreme Court has also held that "an

ineffective-assistance-of-counsel claim asserted as cause for the procedural default

of another claim can itself be procedurally defaulted . . . ." Edwards v. Carpenter,

529 U.S. 446, 453 (2000).

In Martinez, the United States Supreme Court stated that:

      Allowing a federal habeas court to hear a claim of ineffective

assistance of trial counsel when an attorney's errors (or the absence of an attorney) caused a procedural default in an initial-review collateral proceeding acknowledges, as an equitable matter, that the initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim. From this it follows that, when a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit. <u>Cf. Miller-El v. Cockrell</u>, 537 U.S. 322, 123 S. Ct. 1029, 154 L.Ed.2d 931 (2003) (describing standards for certificates of appealability to issue.).

<u>Martinez</u>, 132 S. Ct. at 1318-19. The United States Court of Appeals for the Third

Circuit has stated that:

The <u>Martinez</u> Court made clear, however, that this is a "narrow exception." <u>Id.</u> Most importantly, the Court stated that the exception applies only to attorney error in initial-review collateral proceedings, not appeals from those proceedings. <u>Id.</u> at 1320. And the Court clarified that the exception applies only to cases in which the state formally requires prisoners to raise claims of ineffective assistance of trial counsel on collateral review rather than direct appeal. <u>Id.</u> The reason for these

caveats, it seems, is that the Court was concerned only about cases in which the error of a prisoner's collateral review attorney results in "no state court at any level" hearing the prisoner's claim and the claim being defaulted for purposes of habeas review in federal court. Id. at 1316. Outside of these "limited circumstances," Martinez made clear that Coleman remains law.

Norris v. Brooks, 794 F.3d 401, 404-05 (3d Cir. 2015). "The Third Circuit has upheld the application of Martinez to the Pennsylvania criminal procedural system." Baker v. Wenerowicz, 2014 U.S. Dist. LEXIS 168787, at *14 (E.D. Pa. Nov. 4, 2014) (citing Cox, 757 F.3d at 124 n.8). In determining whether Petitioner's counsel was ineffective for failing to raise a claim that Petitioner's trial counsel was ineffective for failing to challenge the prosecutor's statements during closing arguments, "the court must indulge in a strong presumption that PCRA counsel focused on [the claims raised] 'for tactical reasons rather than through sheer neglect.'" Id. at *15 (quoting Yarbough v. Gentry, 540 U.S. 1, 8 (2003); Jones v. Barnes, 463 U.S. 745 (1983)).

As stated, Petitioner claims that his trial counsel was ineffective for failing to object to the alleged misconduct committed by the prosecution during closing argument. See (Doc. 7, pp. 40-41). However, this claim was not raised during the trial, post-trial, direct appeal, initial PCRA proceedings, or PCRA appeal. See (Doc. 31-21). However, Petitioner did raise this claim in a pro se second PCRA

89

petition.[8]  (Doc. 31-3, pp. 16-23).  Petitioner's second PCRA petition was

dismissed on May 4, 2015.  (Doc. 31-6).  Consequently, for the Court to even

address the merits of this claim, Petitioner must show that the exception in

Martinez not only applies, but has been met.

As discussed above, for Martinez to apply, Petitioner must show that:

> (a) the default was caused by ineffective assistance of post-
> conviction counsel or the absence of counsel (b) in the initial-
> review collateral proceeding (i.e., the first collateral proceeding
> in which the claim could be heard) and (c) the underlying claim
> of trial counsel ineffectiveness is 'substantial,' meaning 'the
> claim has some merit,' analogous to the substantiality
> requirement for a certificate of appealability.

Cox, 757 F.3d at 119.  Said differently, "[p]roedural default may be excused when

the petitioner can prove both 'cause' for the default and 'actual prejudice' that

resulted from the failure of the state court to hear the claim."  Glenn v. Wynder,

743 F.3d 402, 409-10 (3d Cir. 2014) (citing Coleman, 501 U.S. at 750).  "Under

Martinez, the failure of collateral attack counsel to raise an ineffective assistance

of trial counsel claim in an initial-review collateral proceeding[footnote omitted]

can constitute 'cause' if (1) collateral attack counsel's failure itself constituted

ineffective assistance of counsel under Strickland and (2) the underlying

---

[8]  Subsequent to filing his second PCRA petition, Petitioner was appointed counsel.
(Doc. 31-4).  His court-appointed counsel then filed an amended second PCRA petition.  (Id.).
That petition did not include Petitioner's pro se claim of prosecutorial misconduct.  (Id.).

ineffective assistance of trial counsel claim is 'a substantial one,' which is to say 'the claim has some merit.'"  Glenn, 743 F.3d at 410 (quoting Martinez, 132 S. Ct. at 1319).

"When confronted with a claim that a prosecutor's remarks violated [the due process] right, we first determine whether those remarks constituted misconduct." Gov't of the Virgin Islands v. Mills, 821 F.3d 448, 456 (3d Cir. 2016) (citing United States v. Berrios, 676 F.3d 118, 134-36 (3d Cir. 2012); United States v. Lee, 612 F.3d 170, 194 (3d Cir. 2010)).  "If so, we proceed to determine whether that misconduct 'so infected the trial with unfairness as to make the resulting conviction a denial of due process,' Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974); see also Greer v. Miller, 483 U.S. 756, 765, 107 S. Ct. 3102, 97 L. Ed. 2d 618 (1987), taking into account 'the entire proceeding,' [United States v.] Liburd, 607 F.3d [339,] 344 [3d Cir. 2010)] (quoting United States v. Morena, 547 F.3d 191, 194 (3d Cir. 2008))."  Mills, 821 F.3d at 456; see also Woods v. DiGuglielmo, 514 F. App'x 225, 227-28 (3d Cir. 2013) ("'[The Supreme] Court has recognized that prosecutorial misconduct may so infec[t] the trial with unfairness as to make the resulting conviction a denial of due process.'") (alteration in original) (quoting Greer, 483 U.S. at 765).  "'To constitute a due process violation, the prosecutorial misconduct must be of

sufficient significance to result in the denial of the defendant's right to a fair trial.'" Woods, 514 F. App'x at 228 (quoting Greer, 483 U.S. at 765). "It is not enough to show that a prosecutor's remarks were inappropriate; rather a reviewing court must 'examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant' to determine if the misconduct infected the trial with such unfairness as to make the resulting conviction a denial of due process." Cruz v. Glunt, 2016 U.S. Dist. LEXIS 134217, at *30-31 (E.D. Pa. Sept. 28, 2016) (citing Moore v. Morton, 255 F.3d 95, 107 (3d Cir. 2001)).

As for Petitioner's first claim that his trial counsel was ineffective for failing to object to alleged prosecutorial misconduct, that claim is without merit, and thus Petitioner's PCRA counsel's failure to advance that claim does not establish cause to excuse the procedural default. In particular, Petitioner argues that his trial counsel was ineffective because they did not object when the prosecution stated during closing argument that Petitioner's co-defendant had plead guilty to PWID. See (Doc. 31-17, p. 144). Initially, this statement was supported by the record. Notably, the evidence of the co-defendant's plea of guilty was first introduced by Petitioner's trial counsel during cross-examination

of Detective Munch.  <u>See</u> (Doc. 31-17, p. 53).  As evidenced by Petitioner's trial

counsel during closing arguments, it was trial counsel's intention to argue that

Petitioner was merely present in the room with the co-defendant, the actual drug

dealer.  (<u>Id.</u> at pp. 129-36).  Clearly, the prosecution's statement during closing

argument concerning evidence that was introduced by Petitioner's trial counsel in

an effort to establish a theory of the case that was beneficial to Petitioner does not

merit relief.  As a result, trial counsel was not constitutionally ineffective by

failing to object to the prosecution's statement during closing argument that

Petitioner's co-defendant had plead guilty.  Therefore, this claim does not

establish that Petitioner's PCRA counsel was ineffective for failing to raise this

claim during the initial collateral proceeding, and thus fails to constitute cause to

excuse procedural default.

   As for Petitioner's claim that his trial counsel was ineffective for failing to

object when the prosecution stated during closing argument that Petitioner and co-

defendant were acting like "Bonnie and Clyde," that claim also fails to establish

cause to excuse procedural default because it lacks merit.  Specifically, taking into

account the entire proceeding Petitioner has not established that the prosecution's

statement that Petitioner and the co-defendant were acting like "Bonnie and

Clyde" so infected the trial with unfairness as to make the resulting conviction a

denial of due process. Therefore, Petitioner's trial counsel was not ineffective for failing to object to these statements made by the prosecution during closing arguments. As a result, this claim does not establish cause to excuse the procedural default.

Petitioner also claims that habeas relief is warranted because counsel for the Commonwealth committed misconduct when they labeled Petitioner as a drug dealer during closing arguments. In particular, the prosecution made the following statements relevant to this claim during closing arguments: "[i]t's crazy how many bags and how much drug dealing was going on. He didn't know anything about it? Come on. Come on;" "There's a lot of drug traffic going on. There's a lot of dealing going on, a lot of packaging. Look at this desktop, look how cut up that desk top is. When you walk in the bedroom, you would see that right up away, the marred up piece of furniture with residue all over it. There's an operation. There's an agreement to distribute crack cocaine. You walk into the bedroom and it's obvious. There's scales that are on the shelf. Crack cocaine cut up. There's packaging materials all over the place. It's obvious there's an operation going on;" and "He's a drug dealer. They are working together. I'm not saying it was all him. It was both of them. They agreed. They package all this stuff up, sell it, and they'd make money. And they did." (Doc. 31-17, pp. 138-39, 143-144).

Petitioner's counsel was not constitutionally ineffective for failing to object to these statements made by the prosecution during closing arguments. Specifically, these statements, taking in consideration the entire proceeding, do not establish that they so infected the trial with unfairness as to make the resulting conviction a denial of due process. As a result, this claim does not establish cause to excuse the procedurally defaulted claim.

Lastly, Petitioner argues that the prosecution committed misconduct during closing arguments when they directed the jury to convict Petitioner of the crimes charged. Relevant to this claim appears to be the following statements by the prosecution during closing argument: (1) "Convict this man with [PWID] crack cocaine, conspiracy to distribute crack cocaine;" and (2) "As far as the charges regarding Aracelis Gonzalez's daughter, either he lived there or he didn't. You have an operation where there's guns, drugs, packaging materials, there's crack cocaine all over the place. He's involved in this packaging. He's involved in this narcotics operation. There's an 11 year old child in that house. All right. That child is being endangered. This is not an environment for a child. He's guilty of these charges. I would ask you come back with a verdict of guilty. Thank you." (Doc. 31-17, pp. 144-45).

Notably, the trial court presented a curative instruction during its

presentation of the jury instructions.  Specifically, the trial court instructed the jury that "[t]he speeches of counsel are not part of the evidence and you should not consider them as such."  (Doc. 31-17, p. 148); see Abdullah v. Dallas, 498 F. App'x 122, 136 n.15 (3d Cir. 2012); Hunte v. Ferguson, 2017 U.S. Dist. LEXIS 10126, at *9-11 (E.D. Pa. Jan. 25, 2017).  Further, taking into account the entire proceeding, Petitioner has not established that the prosecution's request that the jury find Petitioner guilty of the crimes charged so infected the trial with unfairness as to make the resulting conviction a denial of due process.  See Fisher v. Beard, 2007 U.S. Dist. LEXIS 99149, adopted by, 2009 U.S. Dist. LEXIS 70118 (E.D. Pa. Aug. 10, 2009).  Moreover, Petitioner's trial counsel was not ineffective for failing to object to those statements by the prosecution asking the jury to find Petitioner guilty of the crimes charged.  Hunte, 2017 U.S. Dist. LEXIS 10126, at *10-11 ("counsel's trial choices are granted considerable deference, and counsel may well have decided not to object to the statement for tactical reasons–such as not wanting to draw attention to the remark, or to avoid making repeated objections during closing arguments.[footnote omitted] The Court thus cannot say that counsel's failure to object was constitutionally deficient . . . .").  As a result, this claim does not establish that his procedurally defaulted claim should be excused under Martinez.

Since the claims that Petitioner's trial counsel was constitutionally ineffective for failing to object to alleged prosecutorial misconduct during closing arguments lack merit, these claims fail to establish that Petitioner is entitled to relief under Martinez, and, thus, these claims are procedurally defaulted. As a result, the Court is barred from reaching the merits of these claims.

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327 (citing Slack v. McDaniel, 529 U.S. 473, 481 (2000)). Here, there is no basis for the issuance of a COA. Accordingly, no COA will issue.

"The denial of a certificate of appealability does not prevent [Petitioner] from appealing the order dismissing his petition so long as he seeks, and obtains, a certificate of appealability from the court of appeals." Martz, 2016 U.S. Dist.

LEXIS 59078, at *33 (citing FED. R. APP. P. 22(b)(1), (2)).

## V.     <u>CONCLUSION</u>

Based on the foregoing, Petitioner's petition for a writ of habeas corpus,

(Doc. 7), will be denied.  Further, a COA will not issue.

A separate Order will be issued.


**Date**: August 28, 2017                              **/s/ William J. Nealon**
                                                       **United States District Judge**